ABRAM L. STEBBINS, RECEIVER, v. JOSEPH E. WATSON ET AL.

[See 67 Mich. 507.]

*Mortgage—Execution and delivery with conditions in blank—Parol authority to mortgagee to insert terms.*

Complainant filed a bill to foreclose a mortgage, executed in blank as to conditions of payment, which blanks were filled in after delivery by direction of the mortgagor, as alleged. The court below dismissed the bill on the grounds that the authority was not shown by a preponderance of proof, and that *parol* authority would not be sufficient for that purpose; which decree is affirmed on the *first* ground stated, with an intimation that, under our statute and the weight of authority, the *second* ground is also tenable.

Appeal from Wayne. (Jennison, J.) Argued April 5, 1888. Decided October 12, 1888.

Foreclosure case. Complainant appeals. Decree dismissing bill affirmed. The facts are stated in the opinion.

*Hoyt Post,* for complainant, contended:

1. That the authority claimed is established by the testimony and surrounding circumstances.

2. That such parol authority is sufficient; citing *Drury v. Foster,* 2 Wall. 24, 33, approved in *Allen v. Withrow,* 110 U. S. 119; *Burnside v. Wayman,* 49 Mo. 356; *Field v. Stagg,* 52 Id. 534; *McQuie v. Peay,* 58 Id. 56; *Bank v. Railroad Co.,* 30 Conn. 231, 273; Redf. Railw. § 35; *Owen v. Perry,* 25 Iowa, 412; *Swartz v. Ballou,* 47 Id. 188; *McClain v. McClain,* 52 Id. 272; *Pence v. Arbuckle,* 22 Minn. 417; *Manfg. Co. v. Davis,* 7 Blackf. 412; *Duncan v. Hodges,* 4 McCord, 239; *Ex parte Kerwin,* 8 Cow. 118; *Chauncey v. Arnold,* 24 N. Y. 330; *Ragsdale v. Robinson,* 48 Tex. 379; *Smith v. Crooke,* 5 Mass. 538; *Wiley v. Moor,* 17 Serg. & R. 438; *Vliet v. Camp,* 13 Wis. 198, 204; *Van Etta v. Evenson,* 28 Id. 33; *Schintz v. McManamy,* 33 Id. 299; *Berwick v. Huntress,* 53 Me. 89; *Lockwood v. Bassett,* 49 Mich. 546, 549.

*Edward W. Pendleton,* for defendants Joseph E. and Ida M. Watson, contended :

1. The mortgage is void, an essential addition having been made by the mortgagee in his favor after its execution, and without the authority or knowledge of the mortgagors ; citing 1 Jones, Mort. §§ 90, 91, 94 (notes); Boone, Mort. § 12, 13, and cases cited ; *Smith v. Fellows,* 41 N. Y. Super. Ct. 36 ; *Marcy v. Dunlap,* 5 Lans. 365 ; *Ayres v. Probasco,* 14 Kan. 175.

2. The great weight of authority is opposed to the validity of instruments, essential portions of which were filled in after execution and delivery by *parol* direction; citing *Cross v. Bank,* 5 Pike, 525 ; *Upton v. Archer,* 41 Cal. 85 ; *Ingram v. Little,* 14 Ga. 173 ; *People v. Organ,* 27 Ill. 27 ; *Ayres v. Probasco,* 14 Kan. 175 ; *Clough v. Clough,* 73 Me. 487 ; *Lindsley v. Lamb,* 34 Mich. 509 ; *Burns v. Lynde,* 6 Allen, 305 ; *Byers v. McClanahan,* 6 Gill & J. 250 ; *Chauncey v. Arnold,* 24 N. Y. 330, 337 ; *Graham v. Holt,* 3 Ired. 300 ; *Ayres v. Harness,* 1 Ohio, 368 ; *Gilbert v. Anthony,* 1 Yerg. 69 ; *Preston v. Hull,* 23 Gratt. 600.

*Conely, Maybury & Lucking,* for defendants Lynch and Donaldson, contended :

1. The paper was not a mortgage when delivered to Scranton, and never became such afterwards, because no authority was verbally given to fill in the blanks, and, if so, such authority was not sufficient in law.

2. As to insufficiency of *verbal* authority, counsel cited How. Stat. § 6179; 1 Jones, Mort. §§ 90, 91; Boone, Mort. § 12, where the cases are collected.

*Charles K. Latham,* for defendant Stoepel, contended:

1. The mortgagee could not by verbal authority fill up the blanks in the mortgage; citing 1 Pars. Cont. 46.

2. A material alteration in a mortgage, without the written consent of the mortgagor, annuls it; citing 1 Jones, Mort. § 94; *Warring v. Smyth,* 2 Barb. Ch. 119; *Marcy v. Dunlap,* 5 Lans. 365.

3. Written consent is requisite for the filling up of blanks in mortgages and deeds; citing numerous authorities, which in the main are referred to in prior summary of briefs.

SHERWOOD, C. J.   This action was brought by the complainant to foreclose what purports to be a mortgage given by the defendants Watson to the Scranton & Watson Lumber Company, which is represented by the complainant, covering seven lots on Second street, in the city of Detroit. All the defendants, except the Watsons, are subsequent purchasers or incumbrancers.   The bill is the ordinary foreclosure bill, with the usual averments where filed by a receiver.   All the defendants appeared and answered the complainant's bill.

Joseph E. Watson and wife, the makers of the alleged mortgage, filed their joint answer, in which they deny all indebtedness to the Scranton & Watson Lumber Company, and deny making the mortgage in question; and they neither admit nor deny that the complainant was appointed receiver of the Scranton & Watson Lumber Company, as claimed in the bill.   And they further say and aver that no sum of money is due from them upon said mortgage, and that said mortgage is fraudulent, without consideration, and void.   And the defendants, further answering,

give the history of said mortgage in their own language, as follows :

"On the 31st day of May, A. D. 1886, said Joseph E. Watson, and Ida M. Watson, his wife, executed, and partly filled out, a mortgage blank, of the form in ordinary use, and known as the 'short form' mortgage blank, with nothing written in said blank excepting the said date, their names and residence, as parties of the first part, 'Scranton & Watson Lumber Company, of the same place, a corporation,' as party of the second part, 'ten thousand dollars ($10,000)' as the consideration, and the description of the premises, as hereinbefore described; that the provisions and conditions of payment were left wholly in blank; that said consideration of $10,000 was written in said mortgage only for the purpose of mentioning some amount for a consideration, and not at all because said Watson was indebted to said Scranton & Watson Lumber Company in that amount, or in any amount whatsoever.

"That said Joseph E. Watson was, at the time of executing said mortgage blank, a member of said Scranton & Watson Lumber Company, and had also theretofore been a member of the Stoepel Lumber Company, and he was giving and taking credit with various parties in large amounts; that at the time of the execution of said mortgage blank, as aforesaid, it was understood and agreed by and between said Joseph E. Watson and said Ida M. Watson and James P. Scranton, of the Scranton & Watson Lumber Company, acting for said company, that said Joseph E. Watson and Ida M. Watson should execute said mortgage blank, as aforesaid, and if said Joseph E. Watson should thereafter become indebted or obligated to said Scranton & Watson Lumber Company for money or credit thereafter furnished him by said company, and he should, after contracting such indebtedness, become insolvent, the said Joseph E. Watson would prefer the said Scranton & Watson Lumber Company, by completing and filling out said mortgage blank, by writing therein the amount to be paid to said Scranton & Watson Lumber Company to discharge the obligation of the said mortgage, which should be the amount of the debt thereafter contracted by said Watson to said company, and by delivering said mortgage, so filled out and completed, to said company.

"That, after the said execution of said mortgage blank by said Joseph E. Watson and said Ida M. Watson, the

said Joseph E. Watson did not contract any debt or obligation to said company; that neither the said Joseph E. Watson nor the said Ida M. Watson ever filled out said mortgage blank, or authorized said Scranton or any other person to fill it out, or consented to have it filled out, or had any knowledge whatever of its being filled out, until they learned of its having been filled out and recorded; that said mortgage blank, signed and executed as aforesaid, was left by said Watson in care of said Scranton & Watson Lumber Company, of which said Watson was then a member, but was never delivered to said Scranton or to said company.

"That on, to wit, the 15th day of June, A. D. 1886, in the absence of said Watson, and without the authority, direction, consent, or knowledge of said Joseph E. Watson or said Ida M. Watson, the said James P. Scranton took said mortgage blank, executed as aforesaid, and wrote or caused to be written therein the provision, obligation, and condition of payment referred to in said bill of complaint, and as follows, to wit: 'All liabilities which they may have contracted or incurred for said Joseph E. Watson, as sureties, indorser or indorsers, or any book-accounts, or choses in action, or any unliquidated amounts, due from said Joseph E. Watson to said Scranton & Watson Lumber Company, now due or to grow due,' and the subsequent parts of said mortgage blank, in accordance with said conditions of payment.

"That after filling out said mortgage blank, by writing or causing to be written therein the amount and conditions of payment as aforesaid, the said James P. Scranton, for the said Scranton & Watson Lumber Company, on the 16th day of June, A. D. 1886, caused the same to be recorded in the office of the register of deeds for said county of Wayne."

Defendants further say that the premises described in the mortgage constituted their homestead at the time the said blank mortgage was executed, and at the time it was so filled out and recorded by the plaintiff; and that Mrs. Watson signed the blank when she did upon the express agreement that it was not to secure any present or then existing obligation of her husband; that there

was no understanding or agreement whatever that the blank mortgage should ever be filled out or delivered or used in any manner whatever, and no credit or money was ever advanced or furnished to either of the makers when the blank was signed, or when it was filled out and recorded, which was fraudulently done, without the consent or knowledge, and contrary to the agreement, of the defendants.

Defendant William C. Stoepel answers, and, upon information and belief, states, in substance, the same facts as are contained in the answer of Mr. and Mrs. Watson, and, in addition thereto, says that on September 17, 1886, he purchased the premises described in the complaint, of defendants Watson, in good faith, paying therefor full value, not taking into consideration said mortgage, because of its alleged invalidity, and received therefor a warranty deed; and that he still owns the title thereto. He also claims the benefit of a cross-bill, and asks. that the mortgage be declared to be void, and an order that the same be delivered up to be canceled.

The defendants Lynch and Margaret Donaldson filed their joint and several answer. The Lynches claim to have a lien by virtue of an execution levy upon the property, upon a judgment rendered in their favor for the sum of $141.91 damages, and $29.15 costs, against the said Joseph E. Watson. Margaret Donaldson says, in said answer, she claims a lien against said property for the sum of $399.51; being the amount of a judgment rendered against Joseph E. Watson, and which is now levied upon said property by virtue of an execution issued upon said judgment.

These defendants all deny the validity of the mortgage; aver that it was never executed and delivered to the lumber company, and was fraudulently made and recorded.

They also claim the benefit of a cross-bill, and pray that said mortgage may be declared void, and that it may be removed from record.

The cause was heard before Judge Jennison, upon pleadings and proofs, a part of which were taken in open court, who on December 31, 1887, made the following decree:

"This cause coming on to be heard upon the pleadings and depositions of Joseph E. Watson and Ida M. Watson, and upon proofs taken in open court, and Hoyt Post having been heard in favor of said complainant, and Charles K. Latham having been heard in favor of said defendant Stoepel, E. W. Pendleton in favor of said defendants Joseph E. Watson and Ida M. Watson, and Alfred E. Lucking in favor of said defendants Lynch and Donaldson, and it appearing to the court that said complainant has not, by preponderance of proof, showed what authority was given complainant to have the mortgage filled up after it was executed and delivered, and that parol authority would not be sufficient for that purpose, it is ordered, adjudged, and decreed that the bill of complaint in said cause be, and the same is hereby, dismissed, with costs."

On leave being duly granted by the circuit court, the complainant took an appeal to this Court.

We have examined the record in this case carefully, and we are satisfied the learned circuit judge came to the correct conclusion, and that the mortgage must be held void, for the reason that it was never executed and delivered by the Watsons containing the material provisions it now does. When the alleged mortgage was delivered by Watson to the Scranton & Watson Lumber Company, if it ever was delivered, it is conceded it contained no conditions. And the defense in the case is that the conditions in the mortgage were left blank when it was signed, and that those now appearing in the mortgage were written in afterwards, and without authority of the makers. Watson and his wife were both sworn, and both say they gave

no authority to any one to have the conditions put into the mortgage; and we do not find from any source that Mrs. Watson ever gave any person authority to fill out the blanks. Watson says the design of the mortgage was to secure the company for any personal advances made to him afterwards, provided his share of the profits did not equal the advances; and that the signed blank was left with Scranton personally in trust, and not to be used until he (Watson) should consent and direct; and Mrs. Watson testifies she so understood it, and signed it with such understanding.

Scranton was sworn, and testified that Mr. Watson handed him the paper, and told him to take it to Davock, and have him fill it out. (Davock was the notary who took the acknowledgment.) Scranton took the paper to Davock, at his office, who filled in the conditions as Scranton dictated. Scranton says the mortgage was given to secure past as well as future indebtedness to the company. In stating what Mr. Watson authorized him to do, he says, in substance, that he was authorized by Watson to take the mortgage to Davock, and have him write in the conditions, so worded as to cover all past and future indebtedness and liabilities from Watson to the company, says:

"I never saw Mrs. Watson with reference to this mortgage until after it had been filled up;" further says: "Had no further conversation with Mr. or Mrs. Watson subsequent to the giving of this mortgage, with reference to its validity."

Mr. Davock, in his testimony, says that he filled out the condition of the mortgage as requested by Mr. Scranton; that the Watsons were not present, and he never had any authority from them to fill in the conditions; that the conditions that were afterwards filled in were not mentioned at the time the mortgage was executed.

We have now given the names of all the witnesses who can give or do give us any positive knowledge of the facts upon which the vital question in this case is raised, and as to these facts it will be noticed that Scranton and the Watsons are in direct conflict in their testimony.

Was the change in the instrument, made after it was executed and delivered, with or by the authority of the Watsons? This is the only question of any importance in the case. It is not a question whether, if Mr. Scranton's testimony is to be believed, the parol authority which he swears to would be sufficient (which we think it would not, under our statute and the weight of authority); but did the makers of the blank mortgage give Mr. Scranton any authority at all to fill out the mortgage? If the testimony of the Watsons and the notary is to be credited, they never gave any such authority.

We think the preponderance of the testimony is clearly with the Watsons, and that the decree must be affirmed, with costs.

The other Justices concurred.