KURBEL v. O'HAIR.

1. CANCELLATION OF INSTRUMENTS — DEEDS — FRAUD — GOOD-FAITH
PURCHASERS—NOTICE—EQUITY.
   In suit to cancel deeds on ground of fraud, circuit judge cor-
   rectly found that defendants were innocent purchasers for
   value, that they had no notice or knowledge of fraud, and
   that plaintiffs were not entitled to cancellation.

2. DEEDS—EXECUTION IN BLANK—ESTOPPEL.
   As against innocent purchasers for value, grantors, who re-
   ceived in full agreed purchase price and are still claiming
   benefit of related contracts, are precluded from claiming that
   deeds executed by them are void because executed in blank.

3. SAME—NOTICE OF EXECUTION IN BLANK—INNOCENT PURCHASERS.
   Knowledge by one of grantees that deeds were executed in blank,
   while a circumstance which might well have challenged his at-
   tention to scope of authority of grantors' agent, who per-
   petrated fraud, yet, standing alone, under circumstances of
   case, did not necessarily foreclose possibility of grantees
   being innocent purchasers.

Appeal from Wayne; Spier (James E.), J., pre-
siding. Submitted October 30, 1931. (Docket No.
176, Calendar No. 35,990.) Decided January 4, 1932.

Bill by Stephen Kurbel and another against
Walter O'Hair and others to cancel deeds and set
aside the assignment of a land contract. From de-
cree dismissing bill as to defendants Cliff, plaintiffs
appeal. Affirmed.

*Arthur J. Hass,* for plaintiffs.

*Arthur J. Adams,* for defendants Cliff.

NORTH, J. This bill was filed to secure on the ground of fraud the cancellation and setting aside of two instruments purporting to be deeds wherein plaintiffs are grantors and the defendants John W. Cliff and wife grantees; also cancellation of plaintiffs' assignment of their vendors' interest in a land contract. The trial court was of the opinion that Mr. and Mrs. Cliff were innocent purchasers for value, and he dismissed the bill of complaint. Plaintiffs have appealed.

The defendant Walter O'Hair was defaulted for failure to answer. He and defendant Cliff were employed as real estate salesmen by the Traders Exchange. This was a Detroit real estate agency owned by a Mr. Murphy. O'Hair seems to have acted as general manager. Plaintiffs owned two pieces of real estate in Detroit. One was a vacant lot, the other improved property under contract of sale to defendants Hanson. Plaintiffs desired to secure a farm. They proposed to trade in both properties, also their vendees' contract interest in another parcel. They engaged the services of O'Hair. He found a farm which the owners offered to sell for $6,000. Notwithstanding this, he falsely represented to plaintiffs that he had found a farm which could be purchased for $16,500, that plaintiffs' Detroit properties would be received as a down payment, and the balance of $5,500 would be payable under the terms of a land contract. Plaintiffs agreed to consummate the deal. They signed and gave to O'Hair two deeds, one for each of the Detroit properties. In each of the instruments the name of the grantee was left blank. They also delivered to O'Hair an assignment in blank of their vendors' interest in the Hanson contract. Without plaintiffs' knowledge and contrary to their under-

standing O'Hair retained the two deeds and the blank assignment instead of using them to pass title to the owners of the farm for which plaintiffs were trading. In lieu of transferring these properties to plaintiffs' vendors, O'Hair made to them a cash payment of $500. He did this with the intent of obtaining a secret profit. The deeds and other papers incident to this transaction were in the Traders Exchange office and through that office defendant John W. Cliff, who had no part in the farm deal, learned of the two Detroit properties. He made an effort to dispose of them to third parties. He did not succeed, and shortly entered into an arrangement whereby he personally purchased both parcels. He gave his check for $500 payable to O'Hair for the vacant lot; and another check payable to cash for the purchase of the improved parcel at a price of $1,800. He deducted $207.22 due him from the Traders Exchange as earned commissions, so his check was given for $1,592.78. O'Hair cashed both checks. Prior to his purchase, Mr. Cliff knew the so-called deeds executed by plaintiffs were in blank as to grantees. Incident to his purchase and with his full knowledge, the names of Mr. and Mrs. Cliff were inserted in the deeds as grantees. It is through these instruments and under such circumstances that they claim to be innocent purchasers for value. Three or four months after the consummation of the transactions above outlined, plaintiffs discovered the fraud perpetrated upon them by O'Hair. Their bill for cancellation followed.

The circuit judge correctly found that neither Mr. or Mrs. Cliff had any knowledge or notice of the fraud perpetrated upon plaintiffs by O'Hair in the original real estate transaction, and that O'Hair was plaintiffs' agent. He concluded that Mr. and

Mrs. Cliff were innocent purchasers for value, and that therefore plaintiffs were not entitled to cancellation. Appellants' position is, first, that the deeds, having been blank as to grantees when executed, were void in the hands of the defendants Cliff, who had knowledge of that fact before delivery to them; and, second, because of full knowledge by the defendants Cliff that the deeds were executed in blank, they cannot urge estoppel against plaintiffs' right to relief.

There are many cases which, under certain established circumstances, hold that an instrument in the form of a deed executed in blank as to one or more of its requisites is void. Appellants' brief cites *Newton* v. *McKay,* 29 Mich. 1; *Lindsley* v. *Lamb,* 34 Mich. 509; *Stebbins* v. *Watson,* 71 Mich. 467; *Maynard* v. *Davis,* 127 Mich. 571; *Barras* v. *Barras,* 191 Mich. 473; and *Stamp* v. *Steele,* 209 Mich. 205. None of these cases seem to go so far as to hold that under no circumstance would a deed executed in blank as to grantee be held valid, notwithstanding the grantor placed it in his agent's hands for delivery, that the grantee paid a valuable consideration to the grantor's agent, and that the grantor received in full the agreed purchase price. In such cases the question of estoppel is usually controlling. This is rather plainly indicated in *Lindsley* v. *Lamb, supra,* wherein Justice CAMPBELL said:

"If such a deed could become operative under our statute, which requires an agent's authority to be in writing, it could only be by estoppel."

Also Justice COOLEY, in speaking for the court, said:

"The blank in this case was filled before delivery; and when the delivery is by the grantor himself or

by his direction, the deed as then completed is adopted by him. No one does or can dispute this. Even if the blank were filled up after delivery, the grantor, if he claimed the benefit of accompanying and related contracts, would thereby make the deed as completed his own, and preclude himself from objecting to the invalidity afterwards." *Lockwood* v. *Bassett,* 49 Mich. 546.

"Where a person executes an instrument containing blanks and entrusts it to a third person with power, express or implied, to fill the blanks in a certain manner, and such third person exceeds his authority in filling them, it is well settled that a *bona fide* holder will be protected, and the instrument is enforceable in his hands. * * * And it is held, not only in jurisdictions which recognize the rule that parol authority is sufficient to authorize the filling of blanks in a sealed instrument, but also in the jurisdictions in which the rule is adopted that such authority must be under seal, that where a grantor or obligor executes a deed containing blanks and delivers it to an agent with authority to fill the blanks and deliver it to the grantee or obligee, and such agent exceeds his authority in filling the blanks and delivers it to the grantee or obligee, who takes it without notice of the wrongful act of the agent, the grantor or obligor is estopped to deny that it is his deed." 1 R. C. L. pp. 1022, 1023; citing many cases.

In the instant case appellants are still claiming the benefit of the "related contracts," including the benefit of the $500 paid by O'Hair to those from whom appellants purchased their farm. They have a Reo truck which O'Hair purchased for them, and they are still claiming the farm under their contract of purchase and on the exact terms to which they agreed. While appellants assumed and expected O'Hair was taking the blank conveyances

for those from whom the farm was purchased, the record is barren of testimony that specific directions of that character were given by appellants to O'Hair or that it was specifically so agreed between them. Mr. Cliff's knowledge that plaintiffs' deeds were executed in blank was a circumstance which might well have challenged his attention to the scope of O'Hair's authority; but standing by itself under the circumstances shown it did not necessarily foreclose the possibility of Mr. and Mrs. Cliff becoming innocent purchasers. He may well have been put off his guard by the fact that it was a common custom under similar circumstances for the Traders Exchange to take and hold papers executed in blank by their clients and to later fill in a purchaser's name as grantee or assignee. We have considered the circumstances that Cliff's checks were payable to O'Hair or to cash instead of the Traders Exchange and that Cliff as well as O'Hair was an employee of the Exchange. The trial judge was also mindful of this phase of the record, and he questioned Cliff relative thereto. The witness testified that there was nothing unusual about the manner in which this transaction was handled in the Traders Exchange office or the execution of the instruments in blank; and that he had no intimation until weeks or months later that there was any irregularity or fraud in the transaction with plaintiffs. The circuit judge seems also to have noted the fact that there was a written agreement between plaintiffs and O'Hair which it is fair to assume would have given light upon the scope of O'Hair's authority, and that plaintiffs neither produced this written instrument nor gave an explanation of their failure to do so. Careful consideration of the record brings the conclusion that the circuit judge rightly

disposed of this controversy. Clearly, plaintiffs have a cause of action against O'Hair; but they are not equitably entitled to the relief sought against the defendants Cliff.

The decree is affirmed, with costs to appellees.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.