ANDREAE v. WOLGIN.

1. Fraud—Estoppel—Application of Rule Between Two Innocent Parties.

Rule that, where one of two innocent parties must sustain loss from fraud of third, loss ordinarily falls on one whose act enabled such fraud to be committed, operates by estoppel only to protect one who has exercised ordinary care and prudence.

2. Same—When Defrauded Party May Not Recover.

Where plaintiff, knowing that record title to certain lot was in individual, relied on fraudulent statement of company's agent

As to principle upon which equitable estoppel rests, see annotation in 1 L. R. A. 522.

that he had unrecorded deed thereto, loaned agent money, and took deed to lot as security, he is not entitled to relief as against said company on ground that it had made fraud possible by executing in blank assignment of its vendor's interest in contract on said lot, which agent fraudulently filled in, since plaintiff did not rely on said assignment, could have discovered fraud by exercise of diligence, and was negligent in failing to demand production of said unrecorded deed.

Appeal from Wayne; Hatch (Blaine W.), J., presiding. Submitted October 20, 1931. (Docket No. 154, Calendar No. 36,019.) Decided April 4, 1932.

Bill by Lloyd Andreae against Nicholas Wolgin and others for an accounting and to impress a lien upon real estate. Decree for plaintiff as to defendants Wolgin and Frank M. Pauli Company, a Michigan corporation. Defendant corporation appeals. Reversed as to defendant corporation.

*John W. Babcock,* for plaintiff.

*Clarence C. Donovan,* for defendant corporation.

SHARPE, J. In May, 1928, the defendant Wolgin, a real estate broker in Detroit, called on the plaintiff, cashier of a bank at Yale, to obtain a loan. In a deal theretofore had with the bank, it had sustained a loss in the sum of $1,000, which plaintiff felt that Wolgin was obligated to pay. He had with him at that time a land contract, dated June 13, 1927, executed by Frank M. Pauli and wife as vendors, for the sale of lot 201 of a subdivision in the township of Greenfield, in the county of Wayne, to W. E. Brandt and Marjorie E. Brandt, his wife, on which it appeared there was more than $7,000 unpaid. Attached to this contract was a form of a seller's assignment of land contract, blank as to the name of the assignee and as to the terms of the contract, but containing the description of the lot as in the con-

tract, executed by the Frank M. Pauli Company, by Frank M. Pauli, president, and F. G. Pauli, secretary. It bore no date, but in the acknowledgment thereof it appears to have been executed "On this —————— day of August 1927." Immediately above the signatures appeared the following:

"Said assignee covenants to perform the obligations of the seller in said contract, the lands therein described having been this day conveyed to the assignee by deed of even date.
"Dated ——————."

The loan was not then made. A few days later, Wolgin returned and presented to plaintiff a deed of the lot, executed by him, but in which the name of the grantee was not inserted. He represented to plaintiff that the record title was in Frank M. Pauli, and that he had an unrecorded deed thereof from Pauli in which other lands were included, but did not produce it. He also brought with him a written contract, which, after reciting the execution of the deed and that he, Wolgin, had an option for the period of 60 days to repurchase the property, and that the record title to the lot was in Frank M. Pauli and that Wolgin had a warranty deed covering this lot and other property, provided that if Wolgin did not exercise his option to repurchase within said 60 days he would deliver to plaintiff a warranty deed of the lot from Frank M. Pauli and his wife to himself, subject to mortgages of record on the property, and that, if he failed to do so within 10 days after demand therefor, the plaintiff was authorized to himself secure such a deed from Frank M. Pauli and his wife to himself. This contract was at that time signed by Wolgin and the plaintiff, and plaintiff then loaned him $500, accepting the deed and delivery of the contract and the blank assignment as security therefor.

A few days later, he returned with another contract for the sale of lot 193 in the same subdivision, in which Frank M. Pauli was the owner of the vendor's interest, and in which it appeared that more than $6,000 was unpaid, and which had, attached to it, a similar blank assignment. He also produced a deed of this lot from himself to the plaintiff. There was no contract executed as to this lot. On delivery of the deed and land contract and assignment annexed thereto to plaintiff, he made him an additional loan of $400. At the time these loans were made, it was understood that the deeds executed to plaintiff, which were in effect mortgages, secured the sum of $1,000, above referred to, as well as the loans then made.

It appears that Wolgin had theretofore sold land contracts for the Pauli company, and those here in question, with the assignments annexed, were delivered to him by Frank G. Pauli in order that he might make sale thereof. Wolgin made no effort to repurchase, and, after plaintiff had ineffectually sought to procure the deed from him, he himself requested that Pauli should deed direct to him as provided for in the contract. This request was refused, whereupon plaintiff filed the bill of complaint herein, seeking to impress the loans made by him as liens upon the lots described in the contracts. The contract purchasers were made parties, but, it appearing that they had surrendered their interests, there. was discontinuance as to them.

The trial court applied the rule of law:

"Where one of two innocent parties must sustain loss from the fraud of a third, the loss ordinarily falls on the one whose act has enabled such fraud to be committed" (27 C. J. p. 10),

and entered a personal decree in favor of plaintiff against Wolgin, who had been defaulted, and the Frank M. Pauli Company for the sum of $900 and interest, from which that company has taken an appeal.

The rule as stated is, however, subject to limitations and qualifications. It operates by estoppel only to protect one who has exercised ordinary care and prudence. To sustain the decree, it must appear that the written instruments in the possession of Wolgin conveyed such information to the plaintiff as would induce an ordinarily prudent man to form an honest conclusion that Wolgin was the owner of the lots subject to the contracts and the incumbrances thereon. The title to these lots was in Frank M. Pauli. Of this the plaintiff had notice. It was so stated in the agreement executed by him and Wolgin. It seems clear that no reasonable inference could be drawn from the blank assignments, although signed and acknowledged by the Pauli company, that the company had assigned the contracts and conveyed the lots to Wolgin. Plaintiff knew that the title was in Frank M. Pauli, and he relied upon the promise of Wolgin to deliver a deed thereof to him. It is apparent that he would not have made the loans without such a deed, had he not felt that an opportunity was presented to secure payment of the $1,000 which he claimed Wolgin then owed the bank of which he was cashier.

Much reliance is placed by plaintiff's counsel upon the fact that the assignments executed in blank by the Frank M. Pauli Company were fastened by staples to the land contracts and each contained the statement that the land therein described had been "conveyed to the assignee by deed of even date." A careful reading of the record satisfies us that the

plaintiff in no way relied upon these assignments. He was informed by Wolgin that the record title to both lots was in Frank M. Pauli. The memorandum of agreement executed by plaintiff and Wolgin at the time the deal was consummated so stated. There was no representation by Wolgin that he was the assignee referred to in the assignments. He represented to plaintiff that he had an unrecorded deed from Frank M. Pauli, and it seems clear that it was upon this representation alone that plaintiff relied in making the loans. Had the assignment in blank been executed by Frank M. Pauli instead of by the corporation, there would be more force in this contention. See, *Kurbel* v. *O'Hair,* 256 Mich. 680.

Plaintiff, in relating what occurred between him and Wolgin, testified:

"Well, he had Exhibit 2, which is the land contract and the assignment, but no deed, and in the conversation I told him to make an agreement whereby he would deliver the deed to us with the land contract and assignment and he went back to Detroit and came back with these three papers, after which we paid him the money."

And on cross-examination:

"*Q.*  Is it your custom to make loans of this sort, Mr. Andreae?  *  *  *

"*A.*  No, it is not.

"*Q.*  Do you ordinarily, Mr. Andreae, require an abstract of title?

"*A.*  Yes, sir.

"*Q.*  Will you tell the court why you didn't in this instance?

"*A.*  Because I figured here was a chance to get our thousand dollars back.  *  *  *

"*Q.*  *  *  *  As a matter of fact, Mr. Andreae, you never would have made this loan if Wolgin

wasn't already indebted to you in the sum of a thousand dollars, would you?

"*A.* No, sir.   *   *   *

"*Q.* You examined that assignment carefully, did you?

"*A.* Quite carefully, yes, sir.

"*Q.* And you discovered that the title was in the name of Frank M. Pauli, is that correct?

"*A.* No, Frank M. Pauli Company.

"*Q.* Then why in your memorandum of agreement do you set up that the Wayne county records show the property to be in the name of Frank M. Pauli?

"*A.* Because I presumed that was so.

"*Q.* Yet you just answered that the assignment showed the title was in the name of Frank M. Pauli Company.

"*A.* Whatever it says here, yes.

"*Q.* Yes. Yet in your memorandum of agreement you set up that the title is in the name of Frank M. Pauli individually, is that correct?

"*A.* Whatever it says.   *   *   *

"*Q.* And you waited practically a year before you inquired of Pauli as to whether or not they were going to give you a deed or whether they were going to do anything about it?

"*A.* Yes, sir."

He also admitted that he did not record the contracts or the deeds given him by Wolgin.

After referring to the rule of law as above, it is said in 21 C. J. p. 1173:

"The rule, although general in its terms, operates only to protect those who, in dealing with others, exercise ordinary caution and prudence, and as against those who have voluntarily conferred upon others the usual evidences or indicia of ownership of property, so that they have apparent authority to dispose of it.   *   *   *   It is of course essen-

tial that the conduct of the party against whom the estoppel is claimed should clearly amount to the clothing of another with title to or authority over the property in question."

And p. 1170:

"In no event can an estoppel arise in favor of one who has been guilty of contributory negligence. An estoppel resting wholly on equity cannot be used to shift a loss from one careless person to another when the loss could not have happened without the earlier negligence of plaintiff, and the later negligence of defendant at most only contributed to the result."

In *Jackson, etc., R. Co.* v. *Davison,* 65 Mich. 416, it was held (syllabus):

"The general rule is that one having knowledge of *distinct* facts affecting the title to land which he is about to purchase is not at liberty to close his eyes, and then screen himself under a plea of ignorance of *other* facts connected with those already known to him; but he is bound in good faith to make reasonable inquiry, and will be presumed to have done so, and will be affected with notice of all such facts as he might have learned by such inquiry."

See, also, *Converse* v. *Blumrich,* 14 Mich. 108 (90 Am. Dec. 230); *Oliver* v. *Sanborn,* 60 Mich. 346; *Millar & Co.* v. *Olney,* 69 Mich. 560. The principle of equitable estoppel was discussed at some length by Mr. Justice CHRISTIANCY in *Holmes* v. *Trumper,* 22 Mich. 427 (7 Am. Rep. 661).

It seems apparent to us that plaintiff placed no reliance on the blank assignments executed by the company, when he knew that the title to the lots rested in Frank M. Pauli personally. When Wolgin told him that he had an unrecorded deed from Frank M. Pauli, the slightest degree of prudence on

the part of plaintiff would have required its production and its record before the deeds were accepted by him as security for the loans made. In our opinion, under the record before us, he is not entitled to the benefit of the rule stated, and his bill of complaint should have been dismissed, with costs to appellant, and a decree so providing may be here entered.

The conclusion reached renders it unnecessary to pass upon the sufficiency of the allegations in the bill of complaint to sustain the decree entered, nor do we consider the effect of the delivery of the assignments without the name of the assignee being inserted therein. *Kurbel* v. *O'Hair, supra.*

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.