**MERCANTILE FINANCIAL CORPO-RATION, Plaintiff,**

v.

**SEA WORK MARINE SERVICES, INC., Sea Work Construction Inc. a/k/a Sea Work Contractors, Inc., Defendants.**

**Civ. A. No. 74–2102.**

United States District Court, E. D. Louisiana.

Sept. 26, 1975.

Robert A. Vosbein, New Orleans, La., for plaintiff.

Peter L. Bernard, Jr., Metairie, La., for defendants.

ALVIN B. RUBIN, District Judge:

While the barge KCB–263 was employed uneventfully on its maritime business, the documents pertaining to the barge undertook a bizarre financial voyage of their own. The paper cruise gives rise to this litigation concerning who owns the barge.

The parties agree that the barge once belonged to J. Rich Steers, Inc., and that, on November 15, 1965, Steers sold the barge to Sea Work Contractors, who took possession of it. C. A. Didden, who was acquainted with the controlling stockholder in Sea Work, Warriner, had formed the corporation called Gulf Coast Bridge Company. Warriner and Didden made a deal for Warriner to transfer the barge to Gulf Coast, in exchange for 50% of the ownership in Gulf Coast. Gulf Coast would then secure construction work employing the barge.

Pursuant to this plan, Warriner, on behalf of Sea Work, signed a bill of sale conveying the barge to Gulf Coast on November 1, 1966. Sea Work, however, retained actual possession of the barge. Didden took no steps to transfer any stock in Gulf Coast to Warriner or Sea Work, and, eventually, in response to Warriner's demands, Didden returned the bill of sale to Warriner, on June 24, 1969.

Meanwhile, the barge was employed on various jobs by Sea Work. In August, 1966, Didden, individually, was the project manager of a job in Vicksburg, on behalf of a third party not involved in this litigation, Farrell. On behalf of Farrell, Didden asked Sea Work to rent the barge for use on the project. The barge left New Orleans at 4:00 p. m., August 24, 1966, and remained in Vicksburg until March 1967, employed on the Farrell job. Farrell paid rent to Sea Work, and no money was paid to Gulf Coast.

Between March 1967 and August 1968, Sea Work continued to use the barge. On August 17, 1968, it was towed to a job being done by Barclay-Owens, Inc., and was rented to Barclay-Owens. It was returned to Sea Work by Barclay-Owens on Sunday, September 9, 1968.

Meanwhile, on July 9, 1968, when title to the barge was still in Gulf Coast because the transfer from Sea Work had not yet been rescinded, the elusive Didden, purporting to act on behalf of Gulf Coast Bridge, signed a paper ostensibly conveying the barge to Barclay-Owens. Barclay-Owens did not take physical possession of the barge at this time, be-

cause the barge was in the hands of Sea Work, and, indeed, Barclay-Owens' only physical relationship with the barge occurred when the lease already referred to began the following month.

Barclay-Owens needed financing for its general business operations. So it arranged what was essentially a financing transaction with G.A.C. Leasing Company of Texas. To consummate this transaction, Barclay-Owens sold a congery of equipment to G.A.C. Leasing Company on September 3, 1968. (Because the history is complex, it may be worth mention that at this time Didden had still not attempted to rescind the Sea Work transfer.) G.A.C. Leasing Company promptly leased this equipment (including, on paper, the barge) back to Barclay-Owens. The sale with lease-back included an option permitting Barclay-Owens to repurchase all of the equipment at the end of the lease for $4,500, although the lease was for 36 months at $3,050 monthly.

There is no evidence that Barclay-Owens knew then, or before then, where the barge was, or indeed that any of its officers had any conscious knowledge that it was the same barge it had meanwhile leased from Sea Work.

To raise funds for its own operations, G.A.C. in turn assigned its Barclay-Owens lease in toto to Mercantile Financial Corporation, and pledged as security the title to all the property leased to Barclay-Owens—including, of course, title to the KCB–263.

Thereafter, in October 1971, Sea Work Contractors, Inc. conveyed all of its assets, including the KCB–263, to a sister corporation, Sea Work Marine Services, Inc. Thus, at the time of the transactions between Gulf Coast Bridge, and its manipulator, Didden, and Barclay-Owens, Didden, on behalf of Gulf Coast Bridge, had in his possession the original copy of an instrument purporting to transfer title to the barge to Gulf Coast from Sea Work Contractors, Inc.

On September 3, 1968, when Barclay-Owens purported to sell the barge to G.A.C. Leasing Company, the barge was physically on a Barclay-Owens job, although in fact it was there not by assertion of title but pursuant to a verbal lease with Sea Work.

There is no evidence that G.A.C. or Mercantile ever asked to see the paper work pertaining to the barge at the time of the Barclay-Owens-G.A.C.-Mercantile transaction. However, G.A.C. made a physical inspection of all of the equipment involved in the transaction, for insurance purposes, and this included an inspection of the barge and an appraisal of it. Apparently this occurred at the time the barge was physically on a Barclay-Owens job.

Although Mr. Didden was not present in court (apparently because he could not be located) to put a different face on the transactions, if there was another aspect to be put forth, the parties who were there all agreed, in effect, that Didden was the villain. The question that must be resolved is who must bear the consequences of his ostensible duplicity. It is clear that Sea Work never received the consideration it intended to receive for the barge, and thought (mistakenly, for four years until this lawsuit arose) that the barge had been returned, the Gulf Coast transaction cancelled, and its title was clear. In the meantime, in equal subjective good faith, Mercantile and G.A.C. thought that their Barclay-Owens transaction was, in effect, secured by transfer of ownership of the barge in equal good faith. When Barclay-Owens failed, and Mercantile attempted to locate its security, the facts set forth in this opinion were discovered.

█ Jurisdiction is based on diversity, and the parties agree that Louisiana law applies. While the citizenship of the parties is indeed diverse, the law of the physical situs of an object determines its ownership. *Campbell v. Bag-*

ley, 5 Cir. 1960, 276 F.2d 28. It is of course true that, in Louisiana, parol evidence can be used to show the failure of consideration for an act of sale. *Gulf States Finance Corporation v. Airline Auto Sales, Inc.*, 1965, 248 La. 591, 181 So.2d 36. And an agreement to rescind a sale may likewise be proved by parol evidence. *J. Herman Co. v. A. Ackal & Bros.*, 1931, 171 La. 875, 132 So. 408. But these rules apply between the parties to the transaction, and not with respect to third parties.

■ Third parties are not bound by secret equities among the parties. As to third persons who act in good faith, the parties to a transaction are bound by the appearance they have deliberately given the matter. See, for example, Louisiana Civil Code article 2239, providing that counter letters have no effect against purchasers or bona fide possessors.

This rule is consonant with Louisiana Civil Code article 2480, which provides:

In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.

■ The rule that the seller in possession may be presumed to be the owner is designed to protect third parties who deal with the ostensible seller and who continue to rely upon his apparent possession of the thing purportedly sold. It does not enable the ostensible seller who has executed documents of sale upon which third parties have acted to rely upon his own possession of the thing sold to defeat their rights.

Louisiana Civil Code article 2456 provides:

The sale is considered to be perfect between parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.

■ Didden and Warriner agreed on the conveyance of the barge and executed a bill of sale. Title passed to Gulf Coast. See *C. I. T. Corp. v. J. B. Lee Tractor & Implement Co.*, La.App. 2d Cir. 1967, 204 So.2d 106. It in turn had, and conveyed, title to Barclay-Owens and its successors. Moreover, this case calls for application of the principle, observed in Louisiana as well as elsewhere, that, where one of two innocent parties must suffer, and one of them made the loss possible, then he must bear the burden. *Flatte v. Nichols*, 1957, 233 La. 171, 96 So.2d 477; *Clark-Kelly Livestock Auction Co. v. Pioneer Bank & Trust Co.*, 1955, 228 La. 224, 81 So.2d 869. See *Andreae v. Wolgin*, 257 Mich. 572, 241 N.W. 876; *Forman v. Irby*, Tex.Civ.App., 115 S.W.2d 1229. In the present instance, it was Sea Work and Warriner, its controlling stockholder, who were the original victims of Didden's manipulations and who made possible the subsequent deception of Barclay-Owens, G.A.C. and Mercantile. Regardless of the fact that ultimately the transaction was apparently undone, Sea Work and Warriner put in Didden's hands papers indicating that Gulf Coast was the true owner of the barge. In law, at that moment, and until the transaction was rescinded in July 1969, at least as to third persons, Gulf Coast was the owner. Those who dealt with Gulf Coast during this period of time should be protected.

■ Accordingly, if there were no other issues in this case, G.A.C. and Mercantile would be recognized as the owners of the barge. Defendant Sea Work Marine Services, however, asserts

in a counterclaim that it has acquired ownership of the barge by prescription.

## PLEA OF PRESCRIPTION

Louisiana Civil Code article 3476 provides:

> The ownership of movables is prescribed for after the lapse of three years.

Louisiana Civil Code article 3506 states the requirements for acquisition by prescription of a movable that has not been lost or stolen:

> If a person has possessed in good faith and by just title, as owner, a movable thing, during three successive years without interruption, he shall acquire the ownership of it by prescription unless the thing was stolen or lost.

The facts are not in dispute as to the actual possession of Barge KCB–263. Mercantile Financial Corporation has never had possession of the barge. Sea Work Contractors took title to and possession of the barge in 1965. In 1966 Sea Work Contractors sold the barge to Gulf Coast Bridge Company but retained actual possession. In 1969 Sea Work Contractors believed in good faith that the sale to Gulf Coast Bridge was rescinded. In October 1971, Sea Work Contractors conveyed title to the barge to Sea Work Marine Services. In July of 1974 this lawsuit was filed.

Louisiana Civil Code article 3484 defines "just title" as "title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership of the property." Both Sea Work Contractors and Sea Work Marine Services had just title, in good faith. However, Sea Work Marine Services held title for less than three years before Mercantile Financial Corporation filed suit.

Louisiana Civil Code article 3493 provides:

> The possessor is allowed to make the sum of possession necessary to pre-

scribe, by adding to his own possession that of his author, in whatever manner he may have succeeded him, whether by an universal or particular, a lucrative or an onerous title.

Although this article appears in that portion of the Civil Code that pertains to prescription of ten years, the succeeding article states:

> [I]n every species of prescription, the possession of the heir may be joined to that of the ancestor, and the possession of the buyer to that of the seller. (Emphasis supplied.)

Louisiana Civil Code article 3494. The court is not aware of any Louisiana decision that has held that tacking is not permitted in acquisition by prescription of title to movables.

The possession of the barge by Sea Work Marine Services, together with the possession by Sea Work Contractors, constitutes good faith possession by just title for three years prior to the filing of this lawsuit. Accordingly, the court recognizes Sea Work Marine Services as the sole owner of the Barge KCB–263. Judgment will be rendered in favor of the defendants on both the original complaint and the counterclaim.