## NUTE *v.* NUTE.

A witness may be impeached, by showing that he has made contradictory statements, although his denial of such statements is not positive, but merely that he does not remember them.

When a party is put upon inquiry as to the existence of a prior unregis-tered deed, the question, whether he has made due inquiry, is one of fact, to be determined by the jury, under the instructions of the court; and for that purpose the information obtained by him from proper sources may be proved, though it cannot be used to bear upon the question whether or not there has been such a deed.

The opinion of a witness, previously expressed, as to the general merits of the case, will not ordinarily be admitted to impeach his testimony.

THIS was a real action to recover lands in Madbury. The demandant, Alonzo D. Nute, claimed the lands, under

certain deeds alleged to be made by his grandfather, Andrew Nute, to Daniel Nute, his father, to Susan Nute, his mother, both now deceased, and to himself and his brother, George M. Nute, now deceased; the three deeds embracing different parts of the premises. He alleged that Andrew Nute procured James Y. Demeritt, a justice of the peace, now deceased, to write these deeds; that he signed them, there being then seals upon them, requested two persons to attest them as witnesses, who did so; that he then folded the papers, and gave them to Susan Nute, his son's wife, saying, ".Here, Susan, take these and take care of them," intending thereby to deliver the deeds to Susan for herself, her husband and her sons, who were all present. The tenant, James Nute, contended that the deeds were never delivered, because the arrangement between Andrew Nute and his son and his son's family was, that they should execute a bond, or lease of the property, to secure him a support while he lived, and that with the deeds such a bond or lease was prepared by Demeritt; and that, after Andrew Nute had signed the deeds, his son, Daniel Nute, refused to execute the bond or lease, and Andrew then refused to complete the deeds; which were never acknowledged, though Demeritt, the justice, was present, and another deed, written at the same time, from Andrew to another son, Joseph Nute, was then acknowledged. These three deeds were never acknowledged or recorded, and are now lost.

The tenant also alleged that, if these deeds were delivered, he is still entitled to hold the land, being a *bonâ fide* purchaser without notice, and for a valuable consideration.

The case had been tried in the Court of Common Pleas, at the August term, 1858, and the jury disagreed.

Upon the trial, several questions arose upon the admissibility of evidence, and the defendant took exception to the rulings of the court, namely,

A witness, Walter Durgin, testified that Andrew Nute

placed in his hands, after his son Daniel's death, certain papers, and among them the three deeds set up by the demandant, for safe-keeping. He testified that he had no recollection that there was among those papers any bond or lease, and that he thought he did not swear there was on the former trial. It was now proposed to show that on the former trial he testified: "I think, and it is my belief, I had among those papers that Andrew Nute gave me, a bond or lease to Andrew Nute; by whom to be signed I cannot say." Being objected to, the evidence was not admitted.

Timothy R. Nute testified that, before the defendant purchased the premises, or any part of them, John A. Nute, one of the attesting witnesses of these deeds, told him, the witness, that Andrew Nute had made deeds disposing of his property to Daniel and to Susan, and to George and Alonzo; that the deeds had been signed, and that he had witnessed them, but that they had never been delivered or acknowledged; and, being asked why they were not, he said, " There was a life-lease of the property for the parties to sign, that is, Daniel, Susan and George, which they refused to sign, and Andrew then refused to deliver the deeds, and the business was not completed." It was now proposed to show by this witness that he told his father, the defendant, what John A. Nute had told him before the defendant took any deed from Andrew; which evidence was excluded.

The defendant, James Nute, being a witness, it was proposed to ask him if he said to Demeritt, " Father wishes me to pay you for writing some deeds," and Demeritt said, " I will not take any thing, as the deeds were never executed;" and if he asked Demeritt, " why they were not executed," and Demeritt replied, " Daniel would not sign the life-lease, and your father would not deliver the deeds, and told Susan to put them away;" and that this conversation was before the witness took any

deed of the premises from his father. It appeared that Demeritt wrote the deeds, but there was no evidence that he was present, or knew any thing of the signing or delivery. This evidence was held inadmissible. It was also proposed to ask this witness what his father, Andrew Nute, told him about the deeds to Daniel, Susan, George and Alonzo, having never been delivered, before he purchased, and this evidence was not admitted.

It appeared that said Daniel, Susan and George, were all deceased, and that the plaintiff was only about fifteen years old at the time said Timothy, said Demeritt, and said Andrew Nute, respectively, told said James, the defendant, what he offered to prove they respectively told him.

It was proposed to ask the same witness if Mrs. Horn advised him to take a lease of the farm from Andrew, as being inconsistent with her testimony that Andrew told her, soon after these deeds were signed, that he had finished the deeds, that they were witnessed, and given up to Susan; and this evidence was rejected. The lease from Andrew to James Nute was offered in evidence, dated in 1846, for three years; and it was held inadmissible. It was again offered, as contradicting the evidence of Mrs. Horn last stated, but was not received.

It was also proposed to ask the defendant if he told John A. Nute that the old gentleman was not capable of making a deed, as a contradiction of John A. Nute's testimony that he did so tell him; but the evidence was not admitted.

Walter Durgin testified that he was present when the deed of Andrew Nute to Susan Nute was burned, after the death of Daniel, Susan and George, and that James Nute, the defendant, was present. Subsequently James Nute, on his examination, denied that he was present at any such transaction. Durgin was afterward recalled, and asked in relation to circumstances connected with the burning. The defendant objecting, the counsel for the

plaintiff stated that his object was, by inquiries as to the details of the transaction, to show how distinct was the recollection of the witness. The inquiries were permitted, against the objection of the defendant. And the witness testified in what positions Andrew and James stood in relation to himself, Andrew on his right and James at his left; that James was near him, the room being small; that when he, Durgin, pushed out Susan's deed for Andrew, James was looking on. And on cross examination on this point he said that he could not tell how long he was in that room, he thought fifteen to twenty minutes, but could not swear to any length of time. It was more than one minute. He was asked in by Nancy, he thought, but was not certain. Andrew and James were in there; James was in there, "I swear it." I cannot tell if he was there when I went in. I have no distinct recollection, but think he was there all the time while the deed was destroyed. I saw him. He did nothing. The pan of coals was near the center of the room. I think he stood north or north-east of it. I think Nancy stood near by the bed. She got the coals in a pan or kettle. I cannot tell if tin or cast iron. It might be sheet iron. I can't tell which was in first. The coals were brought in afterward.

The jury having returned their verdict for the plaintiff, the defendant moved for a new trial, by reason of supposed errors in the rulings.

*Christie* and *Wheeler*, for the defendant.

It was competent for the defendant to show what Walter Durgin testified on the former trial, because it has a direct tendency to throw discredit upon the statements of a hostile witness. It makes no difference that Durgin testified that he had no recollection, &c. The point is, did he make two statements contradictory to each other. This it was competent to show, to throw discredit on Durgin as a witness. If so, then he is shown to be dishonest, or of

defective memory. *Crowley* v. *Page,* 7 C. & P. 984; *Ordiorne* v. *Bacon,* 6 Cush. 185; *Commonwealth* v. *Starkweather,* 10 Cush. 59; *Gerrish* v. *Pike,* 36 N. H. 510; 1 Phill. on Ev. 293, 294; *Rex* v. *Oldroyd,* Rus. & Ry. 88; 1 Gr. Ev. 578, note, secs. 443, 444, 449; C. & H. Notes, part 1 (note 533, p. 308) 771.

The defendant should have been allowed to put in the proposed testimony of Timothy R. Nute, because it had a tendency to satisfy the defendant, as a reasonable man, that Andrew's title to the farm in question, so far as the attempted conveyance to Daniel and others was concerned, was unimpaired; for John A. Nute, by virtue of being a witness to the execution and pretended delivery of these deeds, must have known whether there was any delivery or not.

The defendant had a right to testify whether Mrs. Horn advised him to take a lease of the farm. If she did so advise him, her acts would appear inconsistent with her statements on the trial, and diminish her credibility with the jury.

*Christie* further contended that what Durgin swore to in the former trial was admissible upon the same ground as if he were dead, he having now no memory upon the subject; and he also urged that the defendant, James Nute, should have been allowed to contradict the statement of John A. Nute, that the defendant told him Andrew Nute was not capable of making a deed, upon the ground that the statement tended to show that the deeds had been delivered, and that the defendant was acquainted with the facts, and relied only upon the want of capability in the grantor.

*Batchelder,* for the plaintiff, to the point that the former testimony of Durgin was not admissible, cited 1 Stark. Ev. 17; and to the point that the defendant's testimony,

as to what his father told him, was not admissible, he cited 3 Cow. 612.

BELLOWS, J. The plaintiff claims under deeds made by his grandfather, Andrew Nute, many years ago, conveying different parts of the lands demanded to his father, Daniel Nute, and his mother, Susan Nute, both deceased, and to himself and to his brother, George M. Nute, who is also dead. And he claims that the deeds were duly executed and delivered, so as to vest the title. On the other hand, the defendant's case is, that the deeds were never acknowledged or delivered, but that they were prepared in connection with a bond or lease, designed to secure to the grantor a maintenance, and to be executed by the grantees, or some of them, and that, although he signed the deeds, yet as Daniel Nute declined to execute the bond or lease, the said Andrew Nute refused to complete or deliver the deeds. And it appeared that the deeds were never acknowledged or recorded, and were lost.

It became then a material inquiry whether such bond or lease was made at that time, and as part of the family arrangement; and if made, what was done with it? and what was done with the deeds, and by whom were they kept? and were the deeds and bond, or lease, kept together or not? The plaintiff's case is not that the deeds were delivered to the grantees personally, but to Susan Nute, for them; and it appeared from the plaintiff's testimony that they were afterward in the grantor's possession, and delivered by him to Walter Durgin for safekeeping. This evidence was proper for the jury to weigh, as having some tendency to show that the deeds were understood by the grantor to be of value as muniments of title. If the unexecuted bond or lease was deposited at the same time and for the same purpose, the weight to be attached to such deposit of the deeds alone, would be diminished, and, under some circumstances, wholly

destroyed. Indeed it might, in the estimation of the jury, tend legitimately to strengthen the defendant's position. And at all events, evidence that the bond or lease was so deposited, must be regarded as material, and proper for the consideration of the jury. The testimony of Walter Durgin tended to show that the deeds alone were deposited with him, and on cross-examination, as it seems, he testified that he had no recollection that there was among those papers any bond or lease, and that he thought he did not swear there was, on the former trial. To contradict the witness, the defendant offered to prove that on the former trial he testified, "I think, and it is my belief, I had among those papers a bond or lease to Andrew Nute, by whom to be signed I can't say." And we think the evidence should have been received. Without it the testimony of Durgin substantially affirms a deposit of the deeds alone, and although proof of his former statement might not be legitimate evidence that the bond or lease was also deposited, yet it would properly tend to impeach his credit and diminish the weight of his testimony as to the circumstances connected with the deposit of the deeds. Whether the bond or lease was deposited at the same time or not, was a circumstance bearing upon, and qualifying the character of the act as much as a verbal declaration made at the time and part of the *res gestæ ;* as if he had stated that the deeds were to be held for the grantees, and delivered to them whenever they should call for them, or be delivered when they executed the bond or lease, and not before.

Nor does the language used by the witness at the trial justify the rejection of the proof offered, upon the ground that it was not a denial that the bond or lease was deposited with the deeds. The statement of the witness already tended to prove that the deeds alone were deposited, and with no other evidence upon that point, the jury could not well have found otherwise. On the other hand, his testi-

mony at the former trial, if it accorded with what was offered, legally tended to prove that the bond or lease was deposited with the deeds, and, therefore, was in direct conflict, and upon a material point. It is quite well established that the testimony of a witness is not excluded because he uses forms of expression that imply some doubt in his mind, such as "I think," "it is my impression," and the like. *Hoitt* v. *Moulton,* 21 N. H. 588; *State* v. *Flanders,* 38 N. H. 332; 1 Gr. Ev. sec. 440. If, then, testimony of this character has a legal tendency to prove the fact so stated, it would be altogether unreasonable to hold that the witness could not be impeached by proof of former statements by him, which tend to prove the opposite. If it were so, it is easy to see that the doubtful forms of expression would often be resorted to, to avoid the hazard of impeachment. In the case of *Martin* v. *Flanders,* 25 N. H. 195, the defendant was allowed to contradict the statement of the plaintiff's witness, that "he did not know that he had any interest," &c., by his former statements, tending to show that he had such interest. So in *Crowley* v. *Page,* 7 C. & P. 789, where the witness said, "I do not recollect saying to the defendant, in the presence of John Burton, that the hay was of good quality." The case of *Long* v. *Hitchcock,* 9 C. & P. 619, was where the witness said he would not swear that he had not made a certain statement; and it was held, that there being no positive denial, a witness could not be called to prove that he did make the statement; but this was ruled, without much consideration, upon a suggestion of one of the jury, while the counsel for the defendant was addressing them. A similar doctrine was held in *Paine* v. *Buston,* 1 M. & R. 238, where the witness said he did not "*recollect*" making the statement. But from the reasons already stated, we are satisfied that the other is the true rule, and that, as is laid down in *Martin* v. *Farnham,* 25 N. H. 195, the witness may be contradicted by showing

that he has made statements substantially different from those he made on the stand; and so we think they must be regarded, when the two statements legally tend to prove an opposing state of facts, as in the case before us. In accordance with these views are the cases, *Sealy* v. *Georgia*, 1 Kelley, 213, 7 U. S. Dig. 496–191, which is a strong case, and well reasoned; and *People* v. *Jackson*, 3 Parker, C. R. 590, 18 U. S. Dig. 763–211. Another consideration, adverse to the existence of a rule that contradictory statements shall not be received to impeach a witness unless his denial be positive, is the fact that in this State and many others, it is not necessary to make previous inquiry of the witness at all, as to the making of such conflicting statements. And this would seem to be decisive upon the general question.

As the verdict must be set aside upon the ground already stated, it will not be necessary to examine all the remaining questions, as some of them, at least, will not be likely to arise at another trial.

As to the exception that the defendant was not permitted to prove that before he purchased, Timothy R. Nute communicated to him the information derived from John A. Nute, one of the attesting witnesses of these deeds, it would be sufficient to say that the case does not show that the tenant was put upon inquiry as to the existence of these unrecorded deeds, and therefore the testimony, as the case stands, would bear only upon the question whether the deeds were actually delivered, if, indeed, it was not actually immaterial. But, as it is asserted by the tenant's counsel that the plaintiff, by the course of the trial, was enabled to take the position that the tenant was thus put upon inquiry, and as this seems not improbable, from what is stated, we have thought proper to state our views upon the general question. As to what shall put a party upon inquiry, it is impossible to lay down any general rule, but if facts are shown that place him in this position,

he will be charged with notice of all such facts as he might have learned by reasonable inquiry. If, as in this case, it be sought to charge him with notice of a prior unregistered deed, and the point in controversy be whether it was delivered or not, an inquiry of the grantor and the attesting witnesses would, in general, seem to be clearly within the line of his duty; although the extent to which that inquiry should be carried must depend upon the circumstances of the case and the facts elicited, as in *Rogers v. Jones*, 8 N. H. 264. To determine whether or not reasonable inquiry has been made, and whether it resulted in obtaining knowledge of the conveyance, the information obtained from the proper sources must of necessity be shown, and therefore it must be competent to prove the statements made in reply to the inquiries which he is bound to make. And we think that the competency of these statements is not necessarily limited to such as are made in answer to inquiries put with the view of determining whether the party shall purchase the property in question or not. But we see no reason for excluding proof of information coming from the right sources, and upon which it was prudent for the party to rely, though communicated without any reference to a purchase. Of course a reliance upon information obtained without reference to the subsequent purchase would be open to observation, as less likely to be complete and satisfactory.

Upon these views the statements of the grantor, the subscribing witness, and of the person who made the deeds, if shown to be present at the signing and delivery of them, so far as there was any, would be admissible; the object being to rebut any inference of fraud in the subsequent purchaser, by showing that he acted upon due inquiry and in good faith. In determining what are the proper sources of inquiry, the judge who tries the cause must be governed by the peculiar circumstances of each case, and will discriminate carefully between information

offered to bear mainly upon the question, whether the conveyance was actually made; and that which is obtained upon due and necessary inquiry at the right sources of information, and bearing only upon the question of notice.

The advice of Mrs. Horn to the tenant, that he should take a lease of the farm of Andrew Nute, was, at most, an indirect expression of an opinion that he had title to it. It was offered to affect her credit, as inconsistent with her testimony, that Andrew had told her he had finished the deeds, that they were witnessed, and given up to Susan. In *Eaton* v. *Larkin*, 5 C. & P. 372, where the wit- ness, a broker, who had effected the insurance for the plaintiff, testified that certain facts, claimed by the under- writer to be material to the risk were not communicated, and it was proposed by the plaintiff to contradict him by showing that he had previously expressed the opinion that the underwriters "had not a leg to stand upon," it was held by Tindal, J., that it was not admissible, being merely an opinion and not the statement of a fact. And this distinction is recognized in 2 Cow. Phill. Ev. 727 and 772, and also in 1 Gr. Ev. sec. 449, and note 1 on page 619; and in *Holmes* v. *Anderson*, 18 Barb. 420. When, however, the original testimony of the witness is but the statement of an opinion as to the value of property, he may be contradicted by proving that he had before expressed a different opinion, as in *Daniels* v. *Conrad*, 4 Leigh, 401, 405. Beside, the bearing of this evidence is so very remote that courts would not be inclined to dis- turb a verdict on account of its rejection.

The testimony of James Nute, that he did not tell John A. Nute that the old gentleman was not capable of making a deed, would seem to have been rightly rejected, unless the testimony of John A. Nute was, as stated by the de- fendant's counsel, such as to imply a virtual admission by the defendant, that the deeds had been delivered, but were inoperative for want of capacity, or such as to show that

in a conversation touching the fact of a conveyance to those under whom the plaintiff claims, the tenant had objected to the conveyance solely for want of capacity in the grantor.

The re-examination of Walter Durgin was within the discretion of the judge who tried the cause, and we see no objection to the way it was exercised.

Upon the views stated, the verdict must be set aside and a new trial granted.