WASHTENAW LUMBER CO. v. BELDING.

1. MECHANICS' LIENS—FILING OF BILL TO ENFORCE LIEN AND LIS
   PENDENS NOT REQUIRED TO BE SIMULTANEOUS.
   Under 3 Comp. Laws 1915, §§ 14804, 14805, where the bill
   to enforce a mechanic's lien was begun and notice of *lis
   pendens* filed within a year from the time of filing the
   statement of lien, the lien is continued in force pending
   such proceedings, and is not lost by reason of lienor's
   failure to file *lis pendens* when the bill was filed.[1]

2. SAME — PURPOSE OF LIS PENDENS IS TO GIVE CONSTRUCTIVE
   NOTICE.
   The purpose of the notice of *lis pendens* is to give con-
   structive notice of the suit and of the persons and property
   affected thereby.[2]

3. SAME—CONSTRUCTIVE NOTICE—PARTIES.
   A purchaser of land who purchased after proceedings to
   enforce a mechanic's lien thereon had been commenced,
   purchased with constructive notice of lienor's rights, and
   may not rely upon the fact that he was not made a party
   litigant.[3]

4. SAME—GOOD FAITH IN FURNISHING MATERIAL.
   The mere lapse of four months' time between periods of
   furnishing material for a new house is insufficient to
   challenge the good faith of the lienor and to establish that
   the subsequent furnishing of material was a mere subter-
   fuge to gain time for filing statement of lien.[4]

5. SAME—LIEN NOT DEFEATED BY FORFEITURE OF OWNER'S TITLE.
   Under 3 Comp. Laws 1915, § 14798, forfeiture of the title
   to land of a person contracting for the erection of a new
   building thereon does not defeat the lien upon such build-
   ing of any person furnishing services or materials there-
   for.[5]

6. SAME — BUILDING "NEW" WITHIN MEANING OF STATUTE, AL-
   THOUGH PARTS OF OLD BUILDING USED.
   Although materials or parts of the old house were used

[1]Mechanics' Liens, 27 Cyc. p. 367; [2]Id., 27 Cyc. p. 367; [3]Lis
Pendens, 38 C. J. §§ 19, 94; Mechanics' Liens, 27 Cyc. pp. 356,
367; [4]Mechanics' Liens, 27 Cyc. p. 143; [5]Id., 27 Cyc. p. 292.

in the construction of the new, where it may be inferred that new basement walls were made and that the new house is of different construction, it is a "new building" within the meaning of the statute (3 Comp. Laws 1915, § 14798).[6]

7. SAME—STATU QUO—EQUITABLE RULE—APPLICABILITY.
The contention that the lienor may not claim a lien upon the new building until the old building, which was torn down, has been replaced, is without merit; the purpose of the equitable rule invoked being obvious, but having no application to the instant case.[7]

Appeal from Washtenaw; Sample (George W.), J. Submitted January 12, 1926.      (Docket No. 110.) Decided March 20, 1926.

Bill by the Washtenaw Lumber Company against Charles Belding and others to foreclose a mechanic's lien.      From a decree dismissing the bill, plaintiff appeals.      Reversed, and decree entered for plaintiff.

*Carl A. Lehman,* for plaintiff.

*Arthur Brown* and *Frank B. DeVine,* for defendants.

CLARK, J.      Charles Belding and Marie Belding, his wife, owned a small parcel of land on which was an old frame dwelling.      Alvin C. Austin purchased of them on executory land contract.      Freeman Lincoln entered into what is called a purchase agreement with Austin.      This agreement is not in the record.      Such evidence of it as is disclosed indicates that Lincoln's interest in the property under the agreement was that of contract purchaser.      Lincoln tore down the old house and began erecting a new one, using a part at least of the old material, plaintiff lumber company furnishing from time to time material for the new house.      The first of the material was furnished on

---

[6]Mechanics' Liens, 27 Cyc. p. 292; [7]Id., 27 Cyc. p. 292.
233—Mich.—39.

December 4, 1922, and the last, it is claimed, on August 30, 1923. The record is nearly barren of evidence regarding the new house as compared with the old, but there is evidence capable of the inference that new basement walls were made and that the new house is of different construction. The old house was "oddly constructed," "not attractive," the new one is a "very fine structure."

The record states that

"Mr. Austin commenced proceedings against Mr. Lincoln before a circuit court commissioner to terminate the interest of Mr. Lincoln in this property and obtained a judgment on August 4, 1923, of restitution."

And it is pointed out that Lincoln had 30 days thereafter in which to redeem. Plaintiff had no notice or knowledge of this proceeding. Plaintiff filed statement of lien on September 18, 1923. About October 1, 1923, Roy Holmes purchased from Austin and about June 1, 1924, this property was conveyed, it seems by Holmes, to Northrop and wife "with full covenants and warranty."

Plaintiff filed this bill to foreclose its lien on January 29, 1924. The cause was heard on August 1, 1924. Notice of *lis pendens*, it seems, was not filed when the bill was filed. When it was filed is not shown. It was filed before the cause was heard on August 1, 1924, and within a year after filing the statement of lien. The bill was dismissed. Plaintiff has appealed.

1. That the lien was lost by plaintiff's not filing notice of *lis pendens* when the bill was filed. This is based upon the following from the record, no other reference to notice of *lis pendens* being found in the record:

"*Mr. Brown:* At the time of filing the lien and the bill of complaint in this cause and up to the time the *lis pendens* was filed, I would like to have the

record show affirmatively that about two months ago he sold the property to Benjamin Northrop and wife as tenants by the entirety, with full covenants and warranty."

Counsel for appellees say in their brief that no notice of *lis pendens* was filed.   The record as quoted shows that it was filed before the hearing.   Whether the property was sold to Northrop before or after the filing of the notice of *lis pendens* we are unable to say.   If it be granted that Northrop purchased before the filing of the notice of *lis pendens,* as counsel contend, it makes no difference.

The statement of lien was filed September 18, 1923. Section 14804, 3 Comp. Laws 1915, provides in part :

"The several liens herein provided for shall continue for one year after such statement or account is filed in the office of the register of deeds, and no longer unless proceedings are begun to enforce the same as hereinafter provided."   * * *

And section 14805, in part:

"Proceedings to enforce such lien shall be by bill in chancery, under oath, and notice of *lis pendens* filed for record in the office of the register of deeds, shall have the effect to continue such lien pending such proceedings."   * * *

So the plaintiff had one year from September 18, 1923, within which to begin proceedings to enforce the lien.   The bill and the notice of *lis pendens* need not be filed simultaneously.   The proceeding to enforce the lien is commenced by filing the bill.   The purpose of the notice of *lis pendens* is to give constructive notice of the suit and of the persons and property affected thereby.   See *Whitehead & Kales Co.* v. *Taan, ante,* 597, where this question is discussed. See, also, *Alterauge* v. *Christiansen,* 48 Mich. 60; *Dittmer* v. *Bath,* 117 Mich. 571; *Sheridan* v. *Cameron,*

65 Mich. 680; *Smalley* v. *Terra-Cotta Co.,* 113 Mich. 141.

In the instant case both the bill and the notice of *lis pendens* were filed within the year, the proceeding was commenced within the year. The lien was not lost.

2. That Northrop and wife are not parties litigant. Northrop and wife purchased with constructive notice of plaintiff's rights. They acquired no title which they can assert to the prejudice of plaintiff to the conclusion of this proceeding. Of such a purchaser it is said in Phillips on Mechanics' Liens (3d Ed.), § 270:

"The suit will be heard and determined upon the merits as it stood between the parties litigant, perfectly irrespective of any rights which he may have acquired by such purchase, which, if valid for any purpose, can only be so as between himself and his vendor, to enable him, upon the determination of the suit, to succeed to the rights of such vendor."

3. That as statement of lien was not filed within 60 days after April 27, 1923, the right so to file was lost. Plaintiff furnished material on April 27, 1923. The next furnishing was on August 29th, and the last on August 30, 1923. The argument, in substance, is that the furnishing in August was a subterfuge, a mere trick to gain ground for filing the statement of lien. This argument on the record must rest on the mere fact that it is a long time from April 27th to August 29th. There is no other fact to challenge the good faith of plaintiff. Plaintiff's manager, of the reason why materials were not furnished during that period, testified: "That was at the period when the house was to be plastered and there were various things of that sort." This is not disputed.

By Austin's judgment in the proceeding for possession before the circuit court commissioner, Lincoln's rights were to end early in September. There is an

intimation in the record that Austin gave Lincoln additional time to raise the money.   Austin testified of that, "I may have but I don't recollect it."   As late as August 30th, Lincoln had material delivered on the job.

Plaintiff's manager testified, and we find no contradiction:

"I did not know that proceedings had been commenced to put Mr. Lincoln off.   At the time the $46.50 worth of material was furnished on August 29th and 30th, we did not know that Mr. Lincoln had lost his interest, previous to that time.   On August 29th Mr. Lincoln told me he had money to go ahead and complete the job.   He did not tell me his interest had been forfeited the month before."

We think the materials were furnished in due course and in good faith.   *Frohlich* v. *Crows,* 232 Mich. 378.

4. Of the effect on plaintiff's rights of the forfeiture of Lincoln's interest, we quote a part of section 14798, 3 Comp. Laws 1915:

"SECTION 3.   Any person furnishing services or materials for the erection of a new building or structure upon land to which the person contracting for such erection has no legal title, shall have a lien therefor upon such [building] buildings or structure; and the forfeiture or surrender of any title or claim of title held by such contracting person to such land shall not defeat the lien upon such building or structure of such person furnishing services or materials as aforesaid."   *   *   *

5. The new house was a "new building" within the meaning of the statute just above quoted, and this despite the fact that materials or parts of the old house were used in the new.

In *Miller* v. *Hershey,* 59 Pa. 64, it was held, quoting syllabus:

"It is the extent and character of the alterations, and not the change of purpose, which makes the difference between an old and new building.

"Newness of structure in the main mass of the building—that entire change of external appearance which denotes a different building from that which gave place to it, though some parts of the old may have entered into it—is that which constitutes a new building, as distinguished from one altered."

See *Warren* v. *Freeman*, 187 Pa. 455 (41 Atl. 290, 67 Am. St. Rep. 583) ; 5 Words and Phrases (1st Series), p. 4784.

6. And finally:

"It is the contention of the defendants that in no event can the plaintiff claim a lien upon the structure in this case until the old dwelling, which was admitted by all was upon the premises, is replaced."

And to support this contention, the following is quoted from *Carland* v. *United Engineering Co.*, 209 Mich. 244:

"Should the purchaser remove the building, we think the claim of the sugar company that the premises should be restored to substantially the same condition as before the construction of the plant is well founded."

The purpose of this equitable rule is obvious. It may not be carried to absurdity. Applied literally, as defendants would apply it, what is the situation? Lincoln took down the old house, and built the new one on the same site. His right to do that seems not to have been questioned. The condition before construction of the new house then was that there was no dwelling house on the land. If the new house be removed, that condition will be restored.

The decree is reversed. Plaintiff may have decree for the relief prayed, with costs of both courts.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred.