**In re MICHIGAN LITHOGRAPHING COMPANY, Debtor.**

**OWEN–AMES–KIMBALL COMPANY, Plaintiff/Counter–Defendant,**

v.

**MICHIGAN LITHOGRAPHING COMPANY, U.S. Concord, Inc., Barclays–American/Business, Inc. and Old Kent Bank and Trust Company, Defendants,**

v.

**Brett N. RODGERS, Trustee for the Estate of Michigan Lithographing Company, Counter–Plaintiff.**

**Bankruptcy No. SG 90–80574. Adv. No. 90–8200.**

United States Bankruptcy Court, W.D. Michigan, S.D.

Feb. 3, 1992.

Day, Sawdey & Flaggert (Jonathan F. Thoits, argued), Grand Rapids, Mich., for trustee.

Dunn, Schouten & Snoap (Thomas W. Schouten, argued), Wyoming, Mich., for Owen–Ames–Kimball Co.

Brett N. Rodgers, Grand Rapids, Mich., trustee.

## OPINION AND JUDGMENT

JO ANN C. STEVENSON, Bankruptcy Judge.

The issue which confronts this court can be succinctly stated as whether Owen–Ames–Kimball's ("OAK") failure to record a notice of *lis pendens* with the Kent County Register of Deeds as required by § 117 of the Michigan Construction Lien Act (the "Act") renders OAK's asserted construction lien unenforceable against the Trustee under 11 U.S.C. § 544(a)(3) of the Bankruptcy Code where OAK's construction lien was timely and properly recorded and the lien foreclosure suit timely commenced in state court.

The court has jurisdiction over this matter, 28 U.S.C. § 1334(b), which is a core proceeding, 28 U.S.C. § 157(b)(2)(K), (O). Accordingly we may enter a final order or judgment subject to appellate review, 28 U.S.C. § 158.

As established by the facts contained in the pleadings, affidavits and briefs, there is no material issue of fact. Thus this matter is correctly before us on cross motions for summary judgment. *See In re Morweld Steel Prods. Corp.*, 8 B.R. 946 (Bankr. W.D.Mich.1981).

Some background information is required.

OAK did substantial construction work on the Grand Rapids facility located at 217 Grandville Avenue (the "Grandville Property") owned by Debtor Michigan Lithographing Company ("Michigan Litho"). As of February 1, 1989 Michigan Litho owed OAK some $975,093.59 in principal plus $18,875.98 in interest under the construction contract. On February 3, 1989 OAK recorded its claim of lien with the Kent County Register of Deeds office indicating

the total amount owing as of that date as $1,037,063.42. On December 20, 1989 OAK commenced suit against Michigan Litho and various other defendants in the Kent County Circuit Court to foreclose its construction lien on the Grandville facility.

An involuntary chapter 11 petition was filed against Michigan Litho on February 8, 1990, some one year and five days after the recording of the construction lien. Brett N. Rodgers was appointed Trustee on February 12, with the consensual order for relief entered on February 13, 1990. On May 8, 1990 OAK's suit to foreclose its construction lien was removed to this court, Trustee Rodgers filing his counterclaim on May 24, 1990.

The parties have stipulated that the only issue in this case is as follows:

> Whether OAK's failure to record a Notice of Lis Pendens with the Kent County Register of Deeds as required by § 117 of the Michigan Construction Lien Act. renders OAK's asserted construction lien unenforceable against the Trustee under § 544(a)(3) of the Bankruptcy Code.

June 10, 1991 Rescheduling Order at 2. Acknowledging that OAK's lien was timely and properly recorded and that the foreclosure suit was also timely and properly commenced, the Trustee claims that under Michigan law a *bona fide* purchaser purchasing the Grandville Property on February 8, 1990, the date of the involuntary petition, would take the property free of OAK's lien simply because the notice of *lis pendens* was not recorded as of that date. Since such a *bona fide* purchaser of the property could have existed, the Trustee asserts that pursuant to 11 U.S.C. § 544(a)(3) he may stand in the shoes of such a hypothetical *bona fide* purchaser and accordingly the estate would succeed to this property free of OAK's lien interest. OAK contends that as a matter of law, any such purchaser would have constructive notice of OAK's lien by virtue of the recorded claim of lien and therefore OAK is entitled to priority over the Trustee. We agree and grant OAK's motion for summary judgment.

## I.

The Trustee's claim that OAK's lien could be defeated by a *bona fide* purchaser

is based upon the "strong arm" provision of § 544(a)(3) which provides as follows:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by

> . . . . .

> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

A recent decision explained "this somewhat labyrinthine statute" as follows:

> It means that the trustee has the rights of a hypothetical bona fide purchaser of the debtor's property, who became a bona fide purchaser and had perfected the transfer at the moment the bankruptcy petition was filed, if indeed the transfer from the debtor to the bona fide purchaser could be perfected under applicable state law.

*Weisman v. Peters*, 131 B.R. 148, 151 (Bankr.N.D.Ca.1991).

The question of who may be a *bona fide* purchaser is one which is answered by reference to applicable state law. *In re Davidson Rehab. Assoc.*, 103 B.R. 440 (Bankr.S.D.N.Y.1989). The entity claiming *bona fide* purchaser status bears the burden of proving that he falls within the definition. *Oliver v. Sandborn*, 60 Mich. 346, 27 N.W. 527 (1886).

In Michigan, the definition of a *bona fide* purchaser is a purchaser without actual or constructive notice:

> Generally speaking, the essential elements of a *"bona fide* purchase" of land are the payment of valuable consideration, good faith, and the absence of any purpose to take unfair advantage of third persons, and absence of notice, actual or constructive, of the outstanding rights of others.

23 *Mich. Law & Practice, Vendor and Vendee* § 151 (1958).

On its face, the requirement of "absence of notice, actual or constructive, of the outstanding rights of others," would seem to conflict with § 544(a)(3)'s language "without regard to any knowledge of the trustee or of any creditor." However, this language does not negate the effect of constructive notice under applicable state law. *In re Probasco*, 839 F.2d 1352, 1354–55 (9th Cir.1988).

■ In *In re Perrin's Marine Sales, Inc.*, 63 B.R. 4 (Bankr.W.D.Mich.1986), the Honorable David E. Nims addressed this conflict. *Perrin's Marine* involved the trustee's attempt to exercise his § 544(a)(3) "strong arm" powers against defendants who purchased a dockominium from the debtor pre-petition, but whose deed was not recorded until after the debtor filed bankruptcy. After reviewing *McCannon v. Marston*, 679 F.2d 13 (3d Cir.1982), the seminal opinion on this issue, Judge Nims addressed the apparent conflict between the concept "absence of notice, actual or constructive," and the statutory language "without regard to any knowledge of the trustee or of any creditor":

> The court in *McCannon, supra,* makes it clear that an overly broad interpretation of the "without regard to any knowledge of trustee" language in § 544(a)(3) would render even recorded notice insufficient to defeat the claim of the trustee. Congress surely did not intend that result.

63 B.R. at 7. Judge Nims concluded that under Michigan law constructive notice of a third person's interest in property cannot be ignored by the bankruptcy trustee in his quest to achieve *bona fide* purchaser status even when those rights do not appear of record.

*McCannon's* conclusion that the "knowledge" element of § 544(a) encompasses only the personal knowledge of the trustee or creditor,[1] not constructive *notice* which may arise under "applicable law," was adopted. The overwhelming majority of subsequent cases addressing this semantic conflict have followed suit. *See In re Probasco, supra; In re Heinig*, 64 B.R. 456, 458 (Bankr.S.D.Cal.1986); *In re Morse*, 30 B.R. 52, 54 (Bankr. 1st Cir.1983); *In re Gurs*, 27 B.R. 163, 165 (Bankr. 9th Cir. 1983); *In re Hardway Restaurant, Inc.*, 31 B.R. 322 (Bankr.S.D.N.Y.1983); *In re Minton Group, Inc.*, 27 B.R. 385, 389 (Bankr. S.D.N.Y.1983). This court finds the analysis in *Perrin's Marine* persuasive. Accordingly, we are not precluded by § 544(a) from considering any facts that would have given a hypothetical purchaser constructive notice of OAK's lien under state law.

## II.

The crux of the Trustee's claim of entitlement to judgment as a matter of law is that OAK's failure to record a notice of *lis pendens* renders the construction lien ineffective against him as a *bona fide* purchaser pursuant to § 544(a)(3). We understand the argument to be that no other document, recorded or otherwise, or activity can serve as constructive notice of OAK's interest in the Grandville Property. In the Trustee's words, because "the Act clearly specifies the mode of giving notice of fore-

---

1. At the September 6, 1991 hearing on cross-motions for summary judgment, Trustee's counsel moved to have the Trustee sworn and testimony taken as to what he knew on the date the bankruptcy was filed. Counsel for OAK objected. The court denied the Trustee's motion on two bases. The court had previously entered its August 30, 1991 order granting the Trustee's July 19, 1991 Motion to Preclude Expert Testimony. At the August 26, 1991 hearing on that motion the court indicated that no testimony would be taken at the September 6, 1991 hearing on cross-motions for summary judgment. The Trustee was advised that pursuant to FED. R.BANKR.P. 7056(c) he was limited to presenting affidavits in contravention to those submitted by OAK. On August 30, 1991, Trustee Rodgers' affidavit containing the following allegation was filed:

3. On the date of the filing of the involuntary chapter 11 petition, February 8, 1990, deponent had no knowledge of Owen–Ames–Kimball's filing of its complaint in the Kent County Circuit Court, Case No. 89–65128–CK, against Michigan Lithographing Company and others to foreclose Owen–Ames–Kimball's asserted construction lien.

It appears that this is the very testimony which the Trustee wanted to submit at the September 6 hearing. The court accepts this testimony as true on its face. However, as § 544(a) makes clear, whether the Trustee has personal knowledge as to the pending lien foreclosure suit is irrelevant: it is the notice which by law can be charged or is attributable to the hypothetical *bona fide* purchaser in whose shoes the Trustee stands which is significant.

closure of the lien, that is, by a notice of lis pendens, the recording of a notice of lis pendens is the *exclusive* method to give constructive notice of the enforcement of a construction lien." Trustee's Brief in Response to OAK's Motion for Summary Judgment at 5.

OAK contends that its recorded claim of lien would have given a purchaser sufficient notice of the possibility of a claim to necessitate additional investigation into that potential claim by a would-be purchaser. This is termed "inquiry notice." It further contends that the additional investigation would establish that OAK was foreclosing on its lien, and thus cause the purchaser to take subject to the lien.

The Trustee argues that the doctrine of inquiry notice is applicable only where *bona fide* purchaser status is claimed to defeat the claim of one who was in open possession of the subject property at the time of the transfer. Both parties have cited Michigan cases holding that a purchaser claiming *bona fide* status cannot ignore open possession by a third party. Because of this repeated fact pattern, the Trustee apparently assumes that in the absence of open possession by a third party, a purchaser has no duty of inquiry.

While not cited by either party, *Schweiss v. Woodruff*, 73 Mich. 473, 41 N.W. 511 (1889), is dispositive of this argument. In that case title to the property in dispute was originally held by Alexander Woodruff, plattor of a larger parcel. The original plat recorded with the register of deeds was defective because it failed to designate block numbers, although lots were numbered. In June, 1873 Woodruff gave Gowman a warranty deed to block six of the plat. Gowman deeded the property to Arie Woodruff on September 1, 1885, who then took possession of the property.

Unfortunately, another chain of title had earlier sprung into existence as a result of a conveyance in Alexander Woodruff's will. When he died in 1883 he left a tract of land to his daughter Carrie Woodruff which included block six. She and her husband by a subsequent marriage conveyed the property to the plaintiffs, the Schweisses, on June 30, 1885. Before the plaintiffs took title, they obtained an abstract of title which showed the conveyance of block six to Gowman. The court specifically stated that "[n]o one was in the actual possession of the land at the time the plaintiffs purchased, and no streets or lots were fenced or improved." 73 Mich. at 476, 41 N.W. 511. The plaintiffs claimed that they took free and clear of the deed to Gowman as a result of the defect in the plat which prevented the reference to block six in the deed from having any meaning.

This argument was rejected by the court which held that the purchasers had a duty to investigate the seller's title. Had they properly discharged that duty, they would have learned that the property they were purchasing had previously been conveyed to Gowman. Justice Champlin wrote for the unanimous court:

> The only reason urged why inquiry was not made is that the description is so uncertain that they were excused from doing so. There are cases where the subsequent purchaser has the right to rely upon the face of the record, and is not bound to make inquiry outside of what the records disclose. Such are errors in recording when the record contains a wrong description of the land conveyed, or a wrong name of the grantor, or a wrong amount as secured in a mortgage. [Citations omitted]. But the rule does not extend to imperfect or indefinite descriptions in the premises conveyed. *The question in such cases is whether the record contains sufficient to apprise a party that some right or title is claimed or attempted to be conveyed in the premises, and, if it does, the purchaser is bound to use reasonable diligence to ascertain what it is that is so claimed or attempted to be conveyed.*

73 Mich. at 478–79, 41 N.W. 511 (emphasis supplied).

■ While the *Schweiss* court referred to "imperfect or indefinite descriptions" in its opinion, the principle applies with equal force in this case. Matters of record may precipitate a duty to inquire further just as may open possession of the premises by a third party. Contrary to the Trustee's position, the duty of inquiry does not arise only in a limited set of factual circum-

stances. The duty arises whenever the events are such as would lead a reasonable person to question the state of the seller's title. This is the quiddity of the BFP concept.

Even the cases cited by the Trustee do not support his limiting view of the scope of the duty to inquire. In *Kastle v. Clemons*, 330 Mich. 28, 46 N.W.2d 450 (1951), for example, the Supreme Court was faced with a situation where there was sufficient indicia of another's interest in premises used for a bowling alley located on land which the defendant had purchased. Framing the issue as whether defendant, prior to his purchase, had such actual or constructive notice of plaintiff's rights in the premises as to be bound thereby, Judge Dethmers opined that

> When a person has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries concerning the possible rights of another in real estate, and fails to make them, he is chargeable with notice of what such inquiries and the exercise of ordinary caution would have disclosed. [Citation omitted]. In *Wilcox v. Hill*, 11 Mich 256, 263, this Court said:
>
> > "It is *notice*, not *knowledge*, which is required; and it can only be required to be such as men usually act upon in the ordinary affairs of life:  * * *  *And whatever is sufficient to direct the attention of a purchaser to the prior rights or equities of third persons, and to enable him to ascertain their nature by inquiry, should be held sufficient.*"

330 Mich. at 31, 46 N.W.2d 450 (first emphasis in original; second emphasis supplied). No limitation on the scope of investigation necessary for BFP status arises out of this case. On the contrary, the general rule applied by the court is the same broad duty of investigation found in *Schweiss*.

This holding is in line with a host of other Michigan cases which have addressed notice *vis a vis* one who claims to be a *bona fide* purchaser. In *Oliver, supra,* the court considered whether the cutting of timber by one claiming to have a deed was sufficient to put a purchaser on notice. In

addressing the plaintiff's burden in obtaining *bona fide* purchaser status, Justice Champlin instructed that

> [I]t must be remembered that this plaintiff is not putting forward this claim of being an innocent purchaser in good faith, without notice, as a shield to protect a possession acquired, but as a sword to attack the possession and rights of others. *It rests with him, therefore, to disprove every fact and circumstance put in evidence by the defendants from which notice may legitimately be inferred, or which justifies the inference that it was his duty to inquire as to Lyon's ownership.* He is chargeable with notice, not only where the evidence raises a presumption that he knew, but where there is just ground for inferring that reasonable diligence would have led him to a discovery of the truth: *Warren v. Swett,* 31 N.H. 332; *Nute v. Nute,* 41 N.H. 60. "One who willfully remains ignorant where the rights of a third person are concerned, is as much in default as if he had the knowledge which he avoids. The question, therefore, is not merely did the 'plaintiff' know, but *had he sufficient information to render it his duty to inquire,* and would an investigation in the ordinary course of business have led to a discovery of the" title claimed by the opposite party; "or, as the rule is sometimes stated, a purchaser has notice, not only of what is definitely communicated to him, but of all that a proper use of that information would have enabled him to ascertain."

60 Mich. at 355, 27 N.W. 527 (emphasis supplied). This case cannot be read to limit a potential BFP's duty of inquiry to situations in which a third party is in open possession of the property. On the contrary, the language used by the court indicates that the purchaser is charged with a duty to investigate "every fact and circumstance" which would raise a question regarding the status of title.

And in *Dassance v. Nienhuis,* 57 Mich. App. 422, 225 N.W.2d 789 (1975), the Michigan Court of Appeals addressed whether specific defendants were *bona fide* purchasers so as to preclude specific performance against them. Judge T.M. Burns instructed that

[A]ctual notice is not limited to the awareness of the existence of a legal interest in the property, but also covers situations where a party is aware of such facts as would lead a reasonable man to make further inquiries. If the party avoids making further inquiries, he is taken to have notice of those facts which he would have discovered if he had used ordinary diligence. [Citation omitted].

57 Mich.App. at 432, 225 N.W.2d 789. *See also In re Fletcher Oil Co.,* 124 B.R. 501 (Bankr.E.D.Mich.1990).

Uniformly, Michigan courts have held that where there is open possession, one claiming to be a *bona fide* purchaser can not be willfully ignorant of another's rights. However, none of these opinions limit the type of facts which may prompt a BFP to make further inquiries. Instead, they all spring from the same general rule stated in *Schweiss* which broadly states that *any* facts must be investigated if they reasonably suggest that some third party has an interest in the property at issue. These include facts of record, such as an undischarged claim of lien.

### III.

Assuming that further inquiry into the circumstances of the claim of lien would be required, the Trustee grants that such an investigation would result in the purchaser taking subject to OAK's lien. However, the Trustee asserts that OAK's failure to file a *lis pendens* in compliance with the

Act would have allowed a hypothetical purchaser to disregard the recorded claim of lien, even if a duty of inquiry otherwise existed. MICH.COMP.LAWS ANN. § 570.1117 provides in part as follows:

(1) Proceedings for the enforcement of a construction lien and the foreclosure of any interests subject to the construction lien shall not be brought later than 1 year after the date the claim of lien was recorded.

(2) At the time of commencing an action for the enforcement of a construction lien through foreclosure, the plaintiff shall record a notice of lis pendens with respect to the action in the office of the register of deeds for the county in which the real property involved in the action is located.

Both parties have focused on the effect under state law of the silence in § 570.-1117(2) regarding the remedy for failure to record a *lis pendens.* Neither the parties nor the court have been able to locate any state court decisions which directly address this issue under the current statute.[2] In construing the Act we note that the Michigan legislature has directed us to read the Act liberally:

This act is declared to be a remedial statute, and shall be liberally construed to secure the beneficial results, intents, and purposes of this act. Substantial compliance with the provisions of this act shall be sufficient for the validity of the construction liens provided for in this act,

**2.** We note that the Trustee has relied heavily upon *Michigan Land Title Standards,* a compilation prepared by a committee of the Michigan State Bar Association as a practice aid to real estate attorneys, in support of his interpretation of the Act. Standard 17.1 states as follows:

A CLAIM OF CONSTRUCTION LIEN CEASES TO HAVE EFFECT ONE YEAR FROM THE DATE OF ITS RECORDING, UNLESS PROCEEDINGS FOR ITS ENFORCEMENT HAVE BEEN COMMENCED AND A NOTICE OF LIS PENDENS WITH RESPECT TO SUCH ACTION IS RECORDED.

In one of the illustrations to the standard cited by the Trustee, *Michigan Land Title Standards* states that:

In addition to the commencement of a foreclosure proceeding within one year from the date of recording a claim of construction lien,

a notice of lis pendens must be recorded in order to preserve the claim of lien against all parties who do not have actual notice of the suit.

While this language appears to be generally supportive of the Trustee's position, it must be read in the context in which it was drafted. Given the lack of clarity in the statute regarding the effect of failure to record a *lis pendens* practitioners are indeed well advised to record a *lis pendens* at the time of commencing foreclosure proceedings. Such an action would foreclose the possibility of disputes such as the one presently before the court. However, the standards are intended to advise attorneys how to avoid disputes, rather than to aid judges in resolving those disputes once they have arisen. As such, they are informative but have no binding precedential value.

and to give jurisdiction to the court to enforce them.

Mich.Comp.Laws Ann. § 570.1302(1).

### A.

Both parties have made arguments regarding the interpretation of the Construction Lien Act based upon *lis pendens* provisions in its predecessor statute. A brief overview of the history and purpose of the *lis pendens* filing requirement and its relationship to the concept of *bona fide* purchaser may prove beneficial.

The common law doctrine of *lis pendens* was quite harsh. According to its terms, all persons were presumed to have knowledge of any pending lawsuits. Thus, "whoever purchased property involved in a suit, took subject to the rights of the parties as finally determined by the suit." *Baker v. Pierson,* 5 Mich. 456 (1858).

■ The statutory requirement that a notice of *lis pendens* be filed serves to remedy the severe consequences of the common law *lis pendens* doctrine. This statutory modification provides that a notice of *lis pendens* must be filed before a party will be presumed to have constructive knowledge of the pending litigation. *Whitehead & Kales Co. v. Taan,* 233 Mich. 597, 208 N.W. 148 (1926). Logically then the failure to file a *lis pendens* will allow a purchaser to acquire his interest in property unaffected by the pending litigation—provided he acquired that interest as a *bona fide* purchaser without notice, either actual or constructive, of the rights another may have in the property. *See Wood v. Price,* 79 N.J.Eq. 620, 81 A. 983 (1911).

It appears that the predecessor to the Act, the Mechanic's Lien Act (Mich.Comp.Laws Ann. § 570.1 *et seq.*), provided that the recording of a *lis pendens* had the effect of continuing the mechanic's lien pending the proceedings to enforce the lien. Specifically, Mich.Comp.Laws Ann. § 570.10 stated:

> Proceedings to enforce such lien shall be by bill and chancery, under oath, and notice of lis pendens recorded in the office of the register of deeds, shall have the effect *to continue such lien pending such proceedings.*

(Emphasis supplied). From this statutory language the Trustee concludes that the failure to timely record the notice of *lis pendens* under the former statute may terminate a construction lien even though a lien foreclosure suit had been timely commenced. The Trustee further contends that because the current Act is substantially the same as the Mechanic's Lien Act, the filing of a *lis pendens* is still required to continue a lien.

While the Mechanic's Lien Act does state that the filing of the *lis pendens* continues the lien, it does not say that no other act can have that effect. The cases cited by the Trustee, *Washtenaw Lumber Co. v. Belding,* 233 Mich. 608, 208 N.W. 152 (1926); *National Acceptance Co. of America v. Mardigan,* 259 F.Supp. 612 (E.D.Mich.1966); and *McClintic–Marshall Co. v. Ford Motor Co.,* 254 Mich. 305, 236 N.W. 792 (1931), do not establish that the former statute required the filing of a *lis pendens* in order to continue a mechanic's lien, either.

*Washtenaw Lumber* comes closest to supporting the Trustee's interpretation of Mich.Comp.Laws Ann. § 570.10. In *Washtenaw Lumber,* a person purchased land before the one year expiration period of the lien had run. At the time of the purchase, proceedings to foreclose the recorded mechanic's lien had been timely commenced but a notice of *lis pendens* had not yet been filed. The *lis pendens* was later filed within the year, however.

■ The issue was whether a mechanic's lien is lost if the notice of *lis pendens* is not recorded when the foreclosure suit is filed. The Michigan Supreme Court held that the plaintiff would not lose the lien because time still remained within the year in which to record the notice of *lis pendens.* Explaining that *lis pendens* need not be filed simultaneously with the beginning of proceedings to enforce the lien, the court stated, "[B]oth the bill and the notice of *lis pendens* were filed within the year, the proceeding was commenced within the year. The lien was not lost." 233 Mich. at 612, 208 N.W. 152.

*Washtenaw Lumber* does not hold that a mechanic's lien would not survive absent both the filing of a *lis pendens* and com-

mencement of the foreclosure proceedings. That issue was not before the *Washtenaw Lumber* court, the *lis pendens* having subsequently been filed before the year expired. Despite the broad language in *Washtenaw Lumber* that the "lien was not lost" it does not follow that the failure to file a *lis pendens,* in and of itself, would have resulted in the lien's expiration under the former Mechanic's Lien Statute.

In contrast to the cases relied upon by the Trustee are those cases which hold that the filing of a *lis pendens* is not necessary where there is actual notice of foreclosure (*See Wallich Lumber Co. v. Golds,* 375 Mich. 323, 134 N.W.2d 722 (1965)).

Even if it could be assumed that the failure to file a *lis pendens* had the effect under the Mechanic's Lien Act of terminating the lien, we reject out-of-hand the Trustee's statement that the operative language of the Construction Lien Act does not markedly differ from that of the former Mechanic's Lien Act. One need only carefully read and compare the language of the two to discern the quite obvious distinctions. The predecessor statute states that the filing of the notice of *lis pendens* has "the effect to continue the lien" while the successor simply directs that the "plaintiff shall record a notice of lis pendens." Moreover, § 117(2) of the Construction Lien Act does not provide the penalty for failure to record a notice of *lis pendens.* The Trustee has not presented us, nor has the court's independent search found any cases decided under § 117(2) which suggests the remedy which the Trustee argues is mandated, *i.e.* automatic discontinuance of the lien as to a third party.

Having undertaken this discussion of the applicable provision of the Mechanic's Lien Act, we cannot conclude that the language of that act mandates an interpretation of the current statute that failure to file a *lis pendens* terminates the lien. To the contrary, the fact that no similar language is included in the present statute is indicative of a legislative intention to remove any effect given to that language under the predecessor act. *See Michigan Trans. Co.*

*v. Sec. of State,* 41 Mich.App. 654, 665, 201 N.W.2d 83 (1972).

## B.

This interpretation of this legislature's intent is bolstered by other language contained in the Act. For example, the Act provides for the nullification of a claim of lien upon which suit has not been commenced within the one year period. MICH. COMP.LAWS ANN. § 570.1128 provides as follows:

> If any statement or claim of lien has been recorded in the office of a register of deeds, and the time within which proceedings to enforce the lien through foreclosure has elapsed without commencement of the proceedings, a person with an interest in the real property affected by the lien, or that person's agent or attorney, may make and present to the county clerk of the county in which the statement or claim of lien was recorded, an affidavit showing the time when the statement or claim of lien was recorded and the names of the parties to the statement or claim of lien. The county clerk shall examine the records of his or her office, and if it appears that proceedings to enforce the lien have not been commenced within the time provided by law, the county clerk shall execute and deliver to the owner a certificate of that fact, bearing the seal of the circuit court. The certificate may be recorded in the office of the register of deeds for the county where the statement or claim of lien was recorded, *after which the statement or claim of lien shall have no effect.*

(Emphasis supplied). This portion of the statute is significant in two respects. First, the statement in the statute that the claim of lien is rendered nugatory after the filing of the certificate strongly suggests that absent such a filing the claim of lien would remain effective. Second, the procedure for invalidating a claim of lien requires certification by the circuit court clerk that no suit has been commenced rather than certification by the register of deeds that no *lis pendens* has been filed. If the failure to timely file a *lis pendens* terminated the claimant's lien, as the Trustee suggests, this latter procedure would be all that would be necessary for the removal

of a stale claim of lien. Instead the legislature focused upon the nonexistence of litigation in the circuit court as the triggering factor for removal of the claim of lien. The court interprets this language as manifesting the legislature's intent to make the filing of a foreclosure suit rather than the filing of a *lis pendens* as the step necessary to extend the validity of the lien originated through a properly filed claim of lien.[3]

### C.

An examination of construction lien statutes in other states supports the conclusion that, had the legislature intended the remedy for failure to file a *lis pendens* espoused by the Trustee, it would have provided that remedy explicitly. The construction lien statutes of Connecticut and New York both specifically provide that the duration of the construction lien is conditioned upon the timely recording of a notice of *lis pendens*. CONN.GEN.STAT. § 49–39 provides in relevant part that:

> "[a] mechanic's lien *shall not continue in force* for a longer period than one year after the lien has been perfected, *unless the party claiming the lien* commences an action to foreclose it ... and *records a notice of lis pendens* ... within one year from the date the lien was recorded...."

(Emphasis supplied).

The failure to record the notice of *lis pendens* causes the lien to be automatically extinguished pursuant to CONN.GEN.STAT. § 49–40a. *Tomko Electric v. Johndrow*, No. CV–88–0041434 S, 1990 WL 283952 (Conn.Super.Ct. June 6, 1990).

Similarly, the New York statute provides in relevant part:

> No lien ... shall be a lien for a longer period than one year after the notice of the lien has been filed, *unless* within that time an action is commenced to foreclose the lien, and *a notice of the pendency of such action ... is filed with the county clerk of the county in which the notice of lien is filed.*

N.Y.LIEN LAW § 17 (McKinney Supp.1992) (emphasis supplied). Thus under New York law a mechanic's lien expires one year after filing, even though the lienor had commenced an action to foreclose the lien within such time but had not filed a notice of pendency of the action or obtained a court order to continue the lien after such period. *Mineola Rd. Oil Corp. v. Walsh*, 137 N.Y.S.2d 342 (1954). New York law does not specify a procedure for discharging the lien, as is found in Michigan in MICH.COMP.LAWS ANN. § 570.1128. Instead the statute is self-executing and failure to foreclose the lien or secure its extension by order within one year after filing extinguishes the lien. *Bretzfelder v. Froman*, 76 Misc.2d 1063, 352 N.Y.S.2d 549 (1973).

In both Connecticut and New York the failure to record a notice of *lis pendens* within the year results in the automatic expiration of the lien. We are not unmindful that MICH.COMP.LAWS ANN. § 570.1117(2) states "The plaintiff *shall* record a notice of lis pendens." (Emphasis supplied). However, unlike both the Connecticut and New York statutes the current Michigan statute does not contain additional conditional language setting forth the statute's remedy.

We believe that the absence in the Act of any specific and unequivocal statement that the failure to record a notice of *lis pendens* within the one year period automatically terminates the lien as to third parties and the nonexistence of Michigan case law so interpreting the Act cuts heavily against the Trustee's argument that one could become a *bona fide* purchaser by

---

3. The Trustee argued that this provision "was *not* meant to serve as a vehicle for providing constructive notice to subsequent purchasers." Trustee's Brief In Response to Motion for Summary Judgment at 14. This argument misses the point. The significance of this provision is not that a prospective purchaser might utilize this procedure to determine whether a lien is being foreclosed and therefore presumably valid. This may be accomplished through a simple telephone call to the court clerk, as was established by the uncontested Affidavit of David Drain, Deputy County Clerk for the Kent County Circuit Court, attached to OAK's Supplemental Brief as Exhibit 3. The provision is relevant instead because it supports OAK's argument that the filing of a *lis pendens* is not required to sustain the validity of the lien beyond the one year period.

ignoring what was recorded, relying only on what was not recorded. The statutory history and contextual language of the Act also conflict with the Trustee's reading of the Act. In view of the legislature's directive that we read the statute liberally to uphold the validity of liens where possible and the ambiguity of § 117 of the Act, we hold that the use of the word "shall" in § 117 is directory and not mandatory.

## IV.

■ While the proper interpretation of § 117 is an important aspect of this case, it is not the dispositive issue. We must return to the question of what a hypothetical *bona fide* purchaser would do if confronted with the record of the undischarged claim of lien. We cannot conclude that such a purchaser would ignore the claim of lien, given the state of the law. The intensity of the parties' dispute over the correct interpretation of § 117 is itself a testimony that, as of February 8, 1990, a purchaser could not safely assume that the claim of lien was a nullity. Under the circumstances presented here, the court finds that no *bona fide* purchaser could have acquired the Grandville Property without making further investigation into OAK's recorded construction lien. This is especially true where the claim of lien was timely and properly recorded on a parcel of commercial property valued at over one million dollars. The fact that the hypothetical purchase would have occurred a mere five days after the lien would have ceased to be effective had no suit been commenced makes the need for further investigation by the purchaser all the more imperative. Any honest person, using ordinary caution, would make further inquiries concerning the possible rights of another entity in this real estate, here, OAK.

There could be but one result of that investigation. OAK introduced the unrebutted affidavit of real estate attorney David Smith, who has 19 years of experience in the area. With all due respect to Mr. Smith, his affidavit states the obvious:

[A] purchaser of real estate, and certainly a purchaser of real estate of a value in excess of One Million Dollars ($1,000,-000.00), is required by the generally-accepted legal standard of prudence, practice and reasonableness to obtain a title insurance commitment and subsequently a title insurance policy to verify and insure title to the property being purchased. Upon obtaining the title insurance commitment, it is my opinion that the generally-accepted legal standard requires a prudent, reasonable purchaser to examine and verify the status of each and every item specified as an exception to the title insurance coverage.

Affidavit of David Smith, attached to OAK's Supplemental Brief as Exhibit 1. OAK introduced a commitment for title insurance which it obtained on the Grandville Property from Transamerica Title Insurance Company. Exhibit 6 to OAK's Brief in Support of Motion for Summary Judgment. Requirement 11 on Schedule B of the commitment which would have to be satisfied before Transamerica would insure over the claim of lien is "[d]ischarge of the Construction Lien filed by Owen–Ames–Kimball Company, a Michigan corporation recorded on February 3, 1989 in Liber 2596, Page 215." No commitment not containing this requirement was introduced by the Trustee. The effective date of the commitment was April 17, 1990, approximately two and a half months after the lien would have terminated had suit not been commenced. The parties agreed that recent and substantial improvements had been made to the Grandville building which would have been obvious to anyone investigating the claim of lien by viewing the property. Stated in the affidavit of David Drain, Clerk of the Kent County Circuit Court, one telephone call would have confirmed that OAK had timely commenced its lien foreclosure suit. Inquiry could have been made to OAK itself. We cannot imagine that under these circumstances any prospective purchaser would not have taken any *one* of these steps to investigate the claim of lien, each of which would have disclosed the true facts of the situation.

One who claims to be a *bona fide* purchaser cannot be willfully ignorant of another's rights. This is especially critical

where it is the bankruptcy Trustee who puts forward his claim of "being an innocent purchaser in good faith, without notice, [not] as a shield to protect a possession acquired, but as a sword to attack the possession and rights of others." *Oliver, supra* 60 Mich. at 355, 27 N.W. 527. While the Trustee may be shoeless in his search for a *bona fide* purchaser, in acquiring those shoes he may not willfully lose his sight, powers of inquiry, and reason.

Accordingly, Plaintiff/Counter–Defendant Owen–Ames–Kimball Company's Motion for Summary Judgment is granted and Trustee Brett N. Rodgers' Motion for Summary Judgment is denied.

The court will produce the order.